Suzanne GERMANY, Plaintiff,

v.

Carol VANCE, John Paladino, Mark Mulcahy and James Donadini, Jr., Defendants.

Civ. A. No. 82-1271-S.

United States District Court, D. Massachusetts.

Dec. 1, 1987.

---

1144

Steven B. Rosenthal, Bornstein & Cohen, Boston, Mass., for plaintiff.

Michelle A. Kaczynski, Asst. Atty. Gen., Boston, Mass., for defendants.

### AMENDED MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

SKINNER, District Judge.

Plaintiff Suzanne Germany brought this action pursuant to 42 U.S.C. § 1983 and Mass.Gen.L. c. 12, § 11I, alleging the deprivation of her constitutional rights by defendants, who at all pertinent times were employees of the Commonwealth of Massa-

chusetts Division of Youth Services ("DYS"). The case is now before me on cross-motions for summary judgment. Although plaintiff's Amended Complaint contains several counts, she has waived all except Count V. The parties have agreed to have the case decided on the basis of a Statement of Agreed Upon Facts and certain exhibits and affidavits submitted by the parties. Because there is no genuine issue as to any material fact, summary judgment is appropriate at this time. Fed. R.Civ.P. 56(c).

*Facts*

On September 17, 1979, plaintiff was charged with assault and battery upon her father, Michael Hussey. The matter was tried in the juvenile session of the Fourth District Court of Eastern Middlesex County in the Commonwealth of Massachusetts, where plaintiff's father testified against her. Plaintiff was found delinquent and committed to the custody of DYS.

Plaintiff appealed the decision to a jury of six in the Lowell District Court in Middlesex County, where she plead guilty to the charge of assault and battery.[1] Under the terms of an agreed-upon disposition, she was given a suspended sentence to the custody of DYS, with probation. On March 11, 1980, after a suspension hearing, plaintiff was surrendered to DYS custody. At that time, defendant Carol Vance and her supervisor, defendant John Paladino, were assigned by DYS to oversee the care, treatment and housing of the plaintiff.

On March 25, 1980, plaintiff's parents met with Vance and informed her that the alleged assault and battery by the plaintiff on her father never took place, and that plaintiff's father had lied about the assault in order to obtain services for his daughter. Vance reported this information in an internal document which she prepared on or before April 2, 1980 and submitted to Paladino. Defendants Vance and Paladino subsequently discussed the recantation.

Neither Vance nor Paladino informed plaintiff that her father had recanted his testimony. On April 18, 1980, defendant Paladino prepared a document entitled "Regional Court Report" regarding the plaintiff, and submitted it to the Woburn District Court. The recantation was not mentioned in the status report. In May 1980, plaintiff's parents reiterated to defendant Vance their statement that the assault and battery charge had been fabricated.

On June 9, 1980, due to a change in the legal residence of plaintiff's parents, responsibility for plaintiff's case was transferred from Vance and Paladino to defendants Mark Mulcahy and James Donadini, Jr. Just prior to the transfer, copies of all material regarding plaintiff's commitment and treatment were forwarded to Mulcahy, the newly assigned caseworker. Upon reading the materials, defendant Mulcahy learned that the charges against plaintiff had been fabricated. He immediately notified his supervisor, defendant Donadini. He also, on the day of the transfer, informed plaintiff that her father had recanted his testimony. At a meeting on June 9, 1980, defendant Donadini told plaintiff that "anything which can be done to help the situation" would be done.

Plaintiff remained in DYS custody. Within a few weeks, she wrote a letter to Judge Cullen of the Woburn District Court informing him of the recantation. On October 1, 1980, defendant Donadini mailed a letter to Judge Cullen explaining that plaintiff's father had recanted his testimony, and that plaintiff was not amenable to treatment as a result. Upon receipt of Donadini's letter, Judge Cullen appointed counsel for plaintiff. On November 13, 1980, plaintiff was placed in an independent living situation. She was discharged from DYS custody on September 1, 1981.

In Count V of her Amended Complaint, plaintiff alleges that defendants, acting under color of state law, deprived her of her rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. She alleges that defendants'

---

1. Plaintiff indicated in her affidavit that she entered the plea, upon advice of counsel, because she believed her father would testify against her again. Affidavit of Suzanne Germany, sworn to on May 21, 1987, ¶ 5.

failure to inform her and the court of the recantation, their failure to have counsel appointed for her upon learning of the recantation, and their unreasonable detention of her after the recantation, violated her right to counsel, her right to due process of law, her right of access to the courts, and her right to be free from unreasonable searches and seizures.

Defendants argue that the suit is barred by the Eleventh Amendment. They also assert that they are entitled to qualified immunity as state officials because they had no clearly established constitutional duty to disclose the recantation by plaintiff's father.

*Discussion*

A. . Eleventh Amendment.

■ The Eleventh Amendment bars suits for damages against states in federal courts. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). It also bars suits for damages against state officials where the state is the "real, substantial party in interest." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Even defendants concede, however, that state officials who act under state law in a manner violative of the federal Constitution are stripped of their official character and are subject to the consequences of their actions. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Defendants argue, in essence, that there was no constitutional violation, and thus the suit is barred by the Eleventh Amendment.

This argument is in fact merely a restatement of the question presented: did defendants violate plaintiff's constitutional rights. If plaintiff's constitutional rights were denied, defendants concede that there is no Eleventh Amendment defense. If there was no constitutional violation, plaintiff cannot prevail. I therefore hold that the Eleventh Amendment does not bar this

suit, and turn to the question of whether defendants' actions infringed upon plaintiff's constitutional rights.

B. Qualified Immunity.

■ The defendants have raised a qualified immunity defense to all of plaintiff's claims. The defendants in this case, as DYS caseworkers and supervisors performing discretionary functions, are governed by the standards articulated in the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982):

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

This standard is not a subjective test of the official's state of mind, but rather an inquiry into the objective reasonableness of the official's actions. *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1193 (1st Cir.1986). The determination is one for the judge, not a jury. *Hall v. Ochs*, 817 F.2d 920, 924 (1st Cir.1987).

■ The defendants in this case are only liable under 42 U.S.C. § 1983 if they are found to have violated a "clearly established" constitutional right. Since the *Harlow* decision, the term "clearly established" has been clarified. The mere identification of a broad constitutional right that is alleged to have been violated will not be sufficient:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held un-

lawful, ... but it is to say that in light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In determining whether a right is "clearly established," the First Circuit has focused its inquiry on the sufficiency of the existing case law:

> [W]e need not find a ruling tht considered the precise situation at hand. It is enough, rather, that there existed case law sufficient to clearly establish that, if a court *were* presented with such a situation, the court would find that plaintiff's rights were violated.

*Hall v. Ochs,* 817 F.2d at 925. Each of plaintiff's constitutional claims must be examined in this context.

### 1. Right to Counsel.

■ Plaintiff alleges that defendants had a constitutional duty, under the Sixth and Fourteenth Amendments, to provide her with counsel as soon as they learned of her father's recantation. Courts have held, however, that an indigent defendant does not have a constitutional right to have counsel appointed at all post-conviction proceedings. *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Johnson v. Avery,* 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969). Specifically, there is no constitutional right to have counsel appointed on a motion for a new trial. *Dirring v. United States,* 353 F.2d 519, 520 (1st Cir.1965). Indeed, even plaintiff's counsel, in his Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, acknowledges,

> An indigent defendant does not have an absolute right under any provision of the United States Constitution or the Massachusetts Declaration of Rights to appointed counsel in preparing or presenting a motion for a new trial.

Defendants' Memorandum of Law at 14. He continues: "However, when a defendant presents a motion for a new trial which raises a colorable or meritorious issue, 'it is much better practice to assign counsel.' " *Id.* (citations omitted).

Since it is merely "much better practice" to assign counsel under these circumstances, plaintiff has experienced no constitutional deprivation. Moreover, even if plaintiff had a constitutional right to counsel at this stage, it would be difficult to identify any duty a caseworker would have with respect to counsel's appointment.

### 2. Right to be Free from Unreasonable Seizures.

■ Plaintiff's claim that she was denied her Fourth Amendment right to be free from unreasonable seizures is similarly without merit. The Fourth Amendment requires a minimum justification of probable cause in order to make a seizure "reasonable" and therefore constitutional. *Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 2254, 60 L.Ed.2d 824 (1979). Plaintiff was incarcerated pursuant to a court order. Such action is clearly constitutional. Plaintiff's only argument as to the "unreasonableness" of her retention in custody is based on the alleged violation of state regulations governing discharge from DYS custody, all of which are permissive and not mandatory. Defendants' failure to choose a regulatory option of discharge is not violative of the Fourth Amendment.

### 3. Due Process and Right of Access to the Courts.

Plaintiff's claim that defendant's actions deprived her of her right of access to the courts cannot be as easily dismissed. Plaintiff makes two arguments that address this issue. She alleges that defendants, by withholding exculpatory information, denied her due process of law. She also argues that the same action violated her right of access to the courts. I view these two claims as essentially the same; right of access is an element of due process. *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974) ("The right of access to the courts ... is founded in the Due Process Clause ...").

▆▆▆ In light of the qualified immunity defense, the issue presented is whether defendants had any constitutional duty, clearly established in 1980, to reveal to plaintiff that the principal witness in the judicial proceeding which lead to her conviction or commitment had recanted his testimony. Because a reasonable official should have known that withholding the evidence of recantation would violate plaintiff's clearly established right of access to the courts, I find that defendants Vance and Paladino are liable under 42 U.S.C. § 1983. Defendants Mulcahy and Donadini, on the other hand, promptly relayed the evidence of recantation to the plaintiff, thereby fulfilling their constitutional duty. As a result, they are not liable under 42 U.S.C. § 1983, and the motions for summary judgment by defendants Mulcahy and Donadini are allowed.

The Massachusetts Rules of Criminal Procedure permit a convicted defendant in a criminal matter to bring a motion for a new trial "at any time if it appears that justice may not have been done." Mass.R. Crim.P. 30(b). A recantation by the principal witness against the plaintiff would clearly have been grounds to make a motion under Rule 30, whether or not a judge would ultimately allow the new trial.[2] *Commonwealth v. Watson,* 377 Mass. 814, 388 N.E.2d 680 (1979) (motion for new trial based on evidence suggesting that key prosecution witness may have lied at trial merits serious consideration). By withholding evidence of the recantation, defendants Vance and Paladino effectively denied plaintiff her right to make such a motion. Because a motion for a new trial, like a writ of habeas corpus, is designed ". . . to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the

purpose of presenting their complaints may not be denied or obstructed." *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). The importance of this right of access cannot be overstated:

> Access to the courts is a fundamental precept of our system of government. No citizen, regardless of his transgressions, is ever to be legally consigned to the total and unreviewed power of any single branch of government. To make the system work, to maintain the proper checks and the proper balance, no person subject to the power of government can be denied communication with or access to each of the three spheres of governmental authority. This principle serves the highest interest of government, as much as it serves the needs of the individual.

*Andrade v. Hauck,* 452 F.2d 1071, 1072 (5th Cir.1971).

The constitutional right of access to the courts had been clearly established by 1980. Indeed, as early as 1941, the Supreme Court held that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). In 1969, it held that a regulation prohibiting prisoners from assisting each other with habeas corpus petitions was unconstitutional because it interfered with their constitutional right of access to the courts. *Johnson v. Avery, supra. See also, Wolff v. McDonnell, supra* (extending *Johnson* holding to include civil rights claims).

In 1976, the Supreme Court declared: "It is now established beyond doubt that prisoners have a constitutional right of access to the courts."[3] *Bounds v. Smith,* 430

---

2. Defendants' references to their "personal opinions as to the truth or falsity of the recantation" are beside the point. *See* Defendants' Memorandum of Law at 4. It was not for the defendants to determine the strength of plaintiff's claim. Once a principal witness had recanted his testimony, plaintiff had a right to present her case to a judge, whether or not she would ultimately prevail in her motion.

3. This constitutional right is not afforded only to prisoners. *See, e.g., Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed. 2d 72 (1977) (citing numerous Supreme Court cases which recognize and clarify the right). In that case, the Court emphasized that the states have an *affirmative* obligation to assure that inmates have meaningful access to the courts. Thus, it held that the Constitution mandates that adequate law libraries or adequate assistance from persons trained in the law be provided to prisoners. *Id.* at 828, 97 S.Ct. at 1498.

By 1980, numerous cases in the lower court had articulated the types of activities that violate an individual's constitutional right of access to the courts. *See, e.g., Martin v. Wainwright,* 526 F.2d 938 (5th Cir.1976) (interference with outgoing court-directed mail); *Bryan v. Werner,* 516 F.2d 233 (3d Cir.1975) (refusal to notarize court papers); *Nolan v. Scafati,* 430 F.2d 548 (1st Cir.1970) (interference with court-directed mail); *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969) (destruction of legal papers). Furthermore, it was not merely prison guards who were bound by these standards. *See Tyler v. Woodson,* 597 F.2d 643 (8th Cir.1979) (social worker who confiscated legal papers violated constitutional right of access to the courts).

The state of the law in 1980 was clear: state officials had an affirmative duty to guarantee to incarcerated individuals their right of access to the courts. Not only was the state required to provide adequate prison law libraries or adequate assistance from persons trained in the law, but state officials also had to refrain from any activity which would effectively deny to any individual prisoner his or her right to petition the court for redress. The right of access is implicated when a custodian of prisoners, "by regulation, practice or *a single act,* diminish[es] the availability of a judicial forum to hear a prisoner's grievance." *Laaman v. Perrin,* 435 F.Supp. 319, 327 (D.N.H.1977) (emphasis added).

It should have been clear to any official under the circumstances presented by this case that withholding from plaintiff the evidence that her father had recanted his testimony would deny her "meaningful access" to the courts. *See Bounds v. Smith,* 430 U.S. at 823, 97 S.Ct. at 1495 (" '[M]eaningful access' to the courts is the touchstone."). The Supreme Court illustrated the constitutional importance of a prison law library by noting that a prisoner must "know what the law is in order to determine whether a colorable claim exists...." *Bounds v. Smith,* 430 U.S. at 825, 97 S.Ct. at 1497. An individual certainly has at least as strong a need to know the key facts of his or her case in order to determine whether a colorable claim exists. Indeed, failure to disclose facts which are essential to an incarcerated individual's claim for relief may be more effective in denying access to the courts than destroying court papers or limiting access to the mail.[4]

Defendants have offered no countervailing state interest to justify the abridgment of plaintiff's constitutional rights. Indeed, their argument on this issue is disingenuous: defendants claim that plaintiff's constitutional right of access to the courts was

---

4. In cases decided subsequent to 1980, brought under 42 U.S.C. § 1983, courts have found that a state official who withholds evidence that would enable an individual to pursue a claim in court violates the individual's constitutional right of access. *See Bell v. Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984) (police officers violated constitutional right of access to the courts when they concealed from murder victim's family key facts which would form the basis of a civil claim for redress); *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983) (plaintiffs stated a valid cause of action when they alleged that state agents wrongfully interfered with their access to the courts by withholding information), *on re-* *mand,* 586 F.Supp. 1495 (W.D.La.1984) (finding that the facts did not support plaintiffs' claims that defendants acted or failed to act in a manner so as to deny plaintiffs their right of access to the courts). *See also Williams v. City of Boston,* 784 F.2d 430, 435 (1st Cir.1986) ("An official cover-up may violate section 1983 if it deprives plaintiff of his right of access to the courts"). The decisions in these cases were based primarily on pre–1980 precedent, precisely the precedent upon which I have based this decision. *See Hall v. Ochs, supra* (existence of sufficient case law upon which a court could base a decision is adequate to overcome qualified immunity).

not denied because plaintiff had access to telephones and could mail letters. Defendants' Memorandum of Law at 9. Obviously, the availability of such lines of communication was useless unless plaintiff had a reason to believe that she had a colorable claim. Mere "access" is not sufficient; *meaningful* access must be supplied. *Bounds v. Smith,* 430 U.S. at 823, 97 S.Ct. at 1495–96.

In light of preexisting law, the contours of the right of access were sufficiently clear in 1980 that a reasonable official would have understood that withholding the evidence of the recantation in this case would have unconstitutionally denied plaintiff her right of access to the courts. Defendants Vance and Paladino, by withholding evidence of the recantation, violated plaintiff's clearly established constitutional right. Consequently, they are liable under 42 U.S.C. § 1983. Defendants Mulcahy and Donadini, on the other hand, acted in accordance with constitutional standards by relaying the relevant information to plaintiff as soon as they came into possession of it. Defendants Mulcahy and Donadini's motion for summary judgment is therefore ALLOWED. Defendants Vance and Paladino's motion for summary judgment is hereby DENIED. Partial summary judgment shall be entered for the plaintiff against defendants Vance and Paladino on Count V. Counts I through IV are dismissed pursuant to Fed.R.Civ.P. 41, having been waived by the plaintiff.

The clerk shall forthwith schedule a hearing for the assessment of damages.