COMMONWEALTH *vs.* THOMAS F. MCINERNEY.

Norfolk.   November 6, 1979. — March 5, 1980.

Present: QUIRICO, BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Criminal,* Speedy sentencing.  *Constitutional Law,* Speedy
   sentencing.

General Laws c. 279, § 3A, did not entitle a defendant to automatic dis-
   missal of an indictment against him as a result of the prosecutor's
   failure to move for sentence within seven days after this court issued a
   rescript which required a change in the defendant's sentence. [61-63]
A delay of sixteen months between the date of this court's rescript requir-
   ing a change in a defendant's sentence and the defendant's resentenc-
   ing did not, in the circumstances, violate any constitutional rights to
   speedy sentencing. [63-69]

INDICTMENT found and returned in the Superior Court on
October 4, 1974.

Following the decision of this court in 373 Mass. 136, a
motion to dismiss was heard by *Chmielinski,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Robert Sheketoff* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Com-
monwealth.

QUIRICO, J.   The defendant, having been convicted of
murder, filed a motion to dismiss the indictment for alleged
delay in sentencing him thereon.   The motion was denied
and the defendant appeals from that denial.   There was no
error.

We review briefly the events which give rise to this ap-
peal.   On December 12, 1975, the defendant was convicted
of murder in the first degree and was sentenced therefor to
life imprisonment at the Massachusetts Correctional Institu-

tion at Walpole. The sentence was ordered to be served from and after another life sentence which the defendant was then serving for a prior conviction of another murder.[1] On appeal, this court, on July 28, 1977, affirmed the conviction of December 12, 1975, but we held that the evidence was not sufficient to support a finding of the deliberate premeditation necessary for murder in the first degree. We therefore remanded the case to the Superior Court for the entry of a verdict of guilty of murder in the second degree, and for the imposition of a sentence of imprisonment for life as required by G. L. c. 265, § 2. *Commonwealth* v. *McInerney*, 373 Mass. 136, 155 (1977). The rescript from this court was received and docketed by the Superior Court on July 29, 1977, and on the same day the clerk of the latter court sent notice thereof to the defendant's attorney and to the district attorney.

The next development in the case occurred in September, 1978, when the defendant wrote to the clerk of the Superior Court requesting that he be resentenced. On November 24, 1978, the defendant was brought before the Superior Court for resentencing and on that date he filed a motion asking that the indictment against him be dismissed because of the district attorney's delay in moving for resentencing. In an accompanying affidavit the defendant contended that the district attorney had failed to comply with G. L. c. 279, § 3A,[2] and had deprived him of a claimed constitutional right to speedy sentencing. After a hearing the motion was

---

[1] The homicide involved in the present case was committed by the defendant while he was at liberty on parole from the prior life sentence for murder. At the time he was sentenced in the present case, his parole from the prior life sentence had been revoked and he was again serving the first sentence. See *Commonwealth* v. *McInerney*, 373 Mass. 136, 137 n.1 (1977).

[2] The pertinent part of § 3A reads as follows: "Not later than seven days after a plea of guilty or after a verdict of guilty and in any event before adjournment of the sitting at which such plea or verdict has been taken and recorded in a case of felony wherein no question of law has been reported for decision by the supreme judicial court, the district attorney shall move for sentence . . . ."

denied. The case is before us on the defendant's appeal from the denial of that motion.

After denying the motion to dismiss the indictment, the judge revoked the life sentence for first degree murder which had been imposed on December 12, 1975, and in accordance with our rescript of July 28, 1977, he reduced the verdict from that of guilty of murder in the first degree to one of guilty of murder in the second degree. He then imposed a new sentence of life imprisonment for the latter offense, and ordered that it be served from and after the life sentence which the defendant was then serving for an earlier murder.

1. *General Laws c. 279, § 3A.* The first ground which the defendant alleges in his motion as entitling him to a dismissal of the indictment charging him with murder is that "[t]he District Attorney has failed to comply with G. L. c. 279, Sec. 3A." The defendant contends that after receiving the rescript from this court on July 29, 1977, the clerk of the Superior Court "had a duty to enter the verdict promptly, and, under G. L. c. 279, § 3A, it would then have been the duty of the district attorney to move for sentencing within seven days."

When the clerk of the Superior Court received the rescript he did all that he was required to do by entering it on the docket of the case and notifying counsel for the parties thereof. Admittedly the district attorney did not move for sentence within seven days thereafter. General Laws c. 279, § 3A, requires that he do so within seven days "after a plea of guilty or after a verdict of guilty. . . ." The verdict of guilty against the defendant was returned on December 12, 1975, and the prosecutor moved for sentence on that very day. It is debatable, and perhaps doubtful, whether the language of § 3A requires the prosecutor to move for sentence within seven days after an appellate court issues a rescript which requires a change in a defendant's sentence. In the circumstances of the present case the indictment is not required to be dismissed merely for want of such a motion. Although we do not condone the long time which was

allowed to elapse from the date of our rescript to the date
that the defendant was resentenced, there is nothing in the
language of § 3A, or in the record of this case, which can be
construed as entitling the defendant to the dismissal of the
indictment *as a matter of right.*

The defendant tries to draw an analogy between § 3A and
G. L. c. 277, § 72A, as appearing in St. 1965, c. 343, which
entitles a prisoner serving a sentence in a penal institution of
this Commonwealth to apply for prompt trial or other dis-
position of a complaint or indictment pending against him,
and which concludes by requiring that "such prisoner shall,
within six months after such application is received by the
court, be brought into court for trial or other disposition of
any such [complaint or indictment], unless the court shall
otherwise order." He then states that the decision of the
Appeals Court in *Commonwealth* v. *Gove,* 1 Mass. App.
Ct. 614 (1973), was a case where "a fifteen month delay in
bringing an incarcerated defendant to trial on a rape indict-
ment, in violation of G. L. c. 277, § 72A, resulted in
dismissal of the indictment." If that comment is intended
to be a contention that the judge was automatically com-
pelled to dismiss the indictment because it was not brought
to trial within six months after the defendant filed his ap-
plication under G. L. c. 277, § 72A, reliance on the *Gove*
decision of the Appeals Court for such a contention is
misplaced. When the *Gove* case was before this court for
further review, we said: "The Commonwealth has not
challenged the dismissal of the rape conviction by the Ap-
peals Court [under G. L. c. 277, § 72A]." *Commonwealth*
v. *Gove,* 366 Mass. 351, 352 n.1 (1974).

This same question under § 72A was before us again in
*Commonwealth* v. *Alexander,* 371 Mass. 726 (1977), in
which we had granted further review after the decision by
the Appeals Court in 4 Mass. App. Ct. 212 (1976). In our
decision we said, at 728-729: "In this case and in *Common-
wealth* v. *Gove,* 1 Mass. App. Ct. 614 (1973), aff'd on other
grounds, 366 Mass. 351 (1974), the Appeals Court has held
that where delay was neither attributable to the defendant

nor for his benefit, a six months' delay after application for a prompt trial under [G. L. c. 277, § 72A] requires automatic dismissal of the indictment. Since the Commonwealth did not seek further review of this aspect of the Appeals Court decision in *Commonwealth* v. *Gove, supra,* we had no occasion to decide whether a delay exceeding the statutory period required automatic dismissal in that case. See *Commonwealth* v. *Fields,* [371 Mass.] 274, 281 (1976); *Commonwealth* v. *Boyd,* 367 Mass. 169, 179 n.1 (1975). While the defendant in this case was denied his statutory rights and the indictment must be dismissed, we think the statute does not mandate a per se rule of dismissal after the statutory period has expired. . . . [W]e have previously stated that 'General Laws c. 277, § 72A, *does not compel* a judge to dismiss an indictment if the case is not tried or otherwise disposed of within six months after an application for a speedy trial is "received by the court"' (emphasis supplied). *Commonwealth* v. *Fields, supra* at 280-281, quoting from *Commonwealth* v. *Loftis,* 361 Mass. 545, 549 (1972). *Commonwealth* v. *Daggett,* 369 Mass. 790, 792-793 (1976)." See also *Commonwealth* v. *Mattson,* 377 Mass. 638, 639-641 (1979); *Commonwealth* v. *Royce,* 377 Mass. 356 (1979); *Commonwealth* v. *Donati,* 373 Mass. 769 (1977).

The decisions cited above with reference to G. L. c. 277, § 72A, discuss various factors which may be considered in deciding whether to dismiss an indictment which is not tried or otherwise disposed of within the six months' period mentioned therein. These factors are substantially similar to those considered on a motion to dismiss for denial of a speedy trial, and they will be discussed below. At this point we conclude that there is nothing in either G. L. c. 279, § 3A, or in c. 277, § 72A, which entitles a defendant to an automatic dismissal of an indictment against him upon expiration of the time periods mentioned therein.

2. *Constitutional right to prompt sentencing.* The defendant's principal argument is that he has a constitutional right to a prompt sentencing under the Sixth Amendment to

the United States Constitution, and under art. 11 of our
Declaration of Rights, and that this right has been violated
by the delay which occurred in his case. The defendant's
introduction to his argument on this subject states that
"there is very little case law on the subject of speedy sen-
tencing in Massachusetts," and he cites no Massachusetts ju-
dicial precedents thereon. Instead he cites and relies on a
number of decisions by Federal courts which treat the right
to prompt sentencing as similar in most respects to the con-
stitutional right to a speedy trial.

One of the earliest in the line of Federal decisions on this
subject is *Pollard* v. *United States*, 352 U.S. 354 (1957),
where the Court said, at 351-362: "We will assume *arguen-
do* that sentence is part of the trial for purposes of the Sixth
Amendment. The time for sentence is of course not at the
will of the judge. Rule 32 (a) of the Federal Rules of
Criminal Procedure requires the imposition of sentence
'without unreasonable delay.'[3] Whether delay in com-
pleting a prosecution such as here occurred [two years'
delay] amounts to an unconstitutional deprivation of rights
depends upon the circumstances. [Citations omitted.] The
delay must not be purposeful or oppressive. It was not
here. It was accidental and was promptly remedied when
discovered. . . . In these circumstances, we do not view the
lapse of time before correction of the error as a violation of
the Sixth Amendment or of Rule 32 (a). Error in the course
of a prosecution resulting in conviction calls for the correc-
tion of the error, not the release of the accused."

From the *Pollard* decision where the Court "assume[d]
*arguendo* that sentence is part of the trial for purposes of
the Sixth Amendment," several Courts of Appeals then as-
sumed that the case had actually held the law to be what the

---

[3] Rule 28 (b) of Mass. R. Crim. P., 378 Mass. 898 (1979), provides in
part: "After a verdict, finding, or plea of guilty, or a plea of nolo con-
tendere, or an admission to sufficient facts, the defendant shall have the
right to be sentenced without unreasonable delay." However, these rules
did not take effect until July 1, 1979, and the sentence being contested was
imposed on November 24, 1978.

Supreme Court had only "assume[d] *arguendo*" that it was. *United States* v. *Grabina*, 309 F.2d 783, 786 (2d Cir. 1962), cert. denied, 374 U.S. 836 (1963). In *Juarez-Casares* v. *United States*, 496 F.2d 190 (5th Cir. 1974), the court cited *Pollard* for the proposition that "the imposition of sentence is part of the trial for the purposes of the Sixth Amendment speedy trial guarantee." *Id.* at 192. In *United States* v. *Campbell*, 531 F.2d 1333 (5th Cir. 1976), cert. denied, 434 U.S. 851 (1977), the court, at 1335, cited *Pollard* as supporting its statement that "[t]he Supreme Court has stated that unreasonable delay in sentencing may constitute a violation of a defendant's Sixth Amendment right to a speedy trial." See also *Moody* v. *Daggett*, 429 U.S. 78, 93 (1976) (Stevens, J., dissenting). But see *Dickey* v. *Florida*, 398 U.S. 30, 43-46 (1970) (Brennan, J., concurring).

Notwithstanding the progression of cases cited above, and still other Federal cases not cited, which appear to assume that the *Pollard* decision settled the law to be that the Sixth Amendment guaranteed a speedy sentence, there is a more recent case which construes *Pollard* more strictly. In *United States* v. *Campisi*, 583 F.2d 692 (3d Cir. 1978), the court said at 694: "Initially, we note that the Supreme Court has not held squarely that the constitutional right to a speedy trial includes the right to a speedy sentence. However, in *Pollard* v. *United States*, 352 U.S. 354, 361 . . . (1957), the Supreme Court did 'assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment.' We shall follow the same approach in scrutinizing petitioner's claim here." Perhaps in choosing to avoid the question whether speedy sentencing was included in the speedy trial provision of the Sixth Amendment, the Court of Appeals was influenced by the result which it reached. It could safely "assume *arguendo*" that the Sixth Amendment did include the matter of sentencing since it then held that the defendant's Sixth Amendment rights were in any event not violated.

We are in a similar situation here, for we conclude that any constitutional rights to speedy sentencing which the

defendant may have under either the Sixth Amendment or art. 11 of the Declaration of Rights, have not been violated. Therefore, we too may "assume *arguendo*" that these two constitutional provisions entitle the defendant to a speedy sentencing, but we need not actually decide that point.

3. *Application of constitutional rule to facts of this case.* After having assumed that the Sixth Amendment right to a speedy trial includes a similar right to speedy sentencing, the Federal courts then applied to the sentencing cases the same four factor balancing test which the United States Supreme Court identified for use in cases involving claims of denial of speedy trial. These factors, as stated in *Barker* v. *Wingo,* 407 U.S. 514, 530 (1972), are the following: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." This is the precise test expressly applied in *United States* v. *Campbell, supra* at 1335, and in *United States* v. *Campisi, supra* at 694.

Applying the *Barker* balancing test to the facts of the present case, we conclude that the delay in sentencing the defendant involved no violation of his constitutional rights.

As to the first two factors in the *Barker* test, there is little dispute as to the facts, and they require a minimum of discussion. The length of the delay is documented as being about sixteen months, from July 29, 1977, to November 24, 1978. As to the reason for the delay there is little doubt that the district attorney either misunderstood what was required of him after the rescript from this court, or that he neglected to move for resentencing until the end of the sixteen-month period.

As to the defendant's assertion of his right to be sentenced, he must bear some part of the responsibility for the delay. He was represented by counsel who was notified of the rescript of this court. The defendant now contends that for sixteen months after the rescript he "suffered great stress, concern, and anxiety, because it was not yet determined whether his [new] sentence would run concurrently or from and after the sentence he was already serving" and that

"[u]ntil that decision was made, he was in an emotional as well as a legal limbo." While he may rightfully contend that he was not legally obligated to do anything about expediting his resentencing, yet his failure to do anything about it for fourteen months after which he wrote his letter to the clerk of the court in September of 1978, is an item to be considered in striking a balance in this case. The fact that the defendant was at all times able to put an end to his claimed long ordeal of stress, concern and anxiety by simply writing a letter, as he ultimately did, can be considered in determining whether he was the unwilling victim of purposeful or oppressive delay. This small measure of self-help is not too much to expect from one who claims to have suffered for fourteen months from the deprivation of a constitutional right.

The fourth factor in the *Barker* balancing test is perhaps the most important in our conclusion that in this particular case there was no violation of the defendant's right to be sentenced reasonably promptly. The length of the delay is, of course, relevant, but it is not necessarily decisive. "If there has been an unreasonable delay, and if that delay results in prejudice to the defendant, then a violation has occurred." *Juarez-Casares* v. *United States*, 496 F.2d 190, 192 (5th Cir. 1974). "In determining whether a period of delay is unreasonable, it is necessary to look to the circumstances of each particular case." *United States* v. *Campisi*, 583 F.2d 692, 693 (3d Cir. 1978).

In arguing on the motion to dismiss the indictment, the defendant's counsel substantially repeated the allegations which had been made in the affidavit accompanying the motion, viz., that "I have suffered great emotional tension and stress due to my not having been sentenced. In particular, I have been worried as to whether the new sentence would be concurrent with or 'on and after' the sentence I am currently serving. I have also been ineligible for certain prison programs due to not having been sentenced." There is nothing in the record as to what these "certain programs" were or how the defendant suffered in relation thereto by

the delay in sentencing since he was already serving an un-expired life term. At the close of the argument on the mo-tion the judge said: "I don't think there has been any harm done to the individual whatsoever. I am going to deny the motion." There was no error in denying the motion.

The question is whether the delay in resentencing the de-fendant caused him any legal prejudice. Even if the trial judge, or this court, were to accept as true the defendant's claim that he "suffered great emotional tension and stress due to . . . not having been sentenced, [and that he] worried as to whether the new sentence would be concurrent with or 'on and after' the sentence [he was] currently serving," that does not require a conclusion that he suffered legal preju-dice from the delay in sentencing.

The defendant was not entitled, as a matter of right, to receive a concurrent sentence for the second murder which he committed while enjoying the hospitality of his victim. It is difficult to believe that the defendant could ever have had any serious question about what his sentence for the second murder would be. When he was first convicted he was given a second life sentence to be served from and after the one he was already serving. When he was resentenced for the second murder he was given a life sentence to be served from and after the one he was already serving, albeit that the new life sentence carried with it the possibility of ultimate liberty on parole.

There was nothing about the delay which deprived the defendant of a chance to receive concurrent sentences. The judge imposing the second life sentence was asked by the de-fendant's counsel to make it concurrent with the prior life sentence because "this is not the type of case which warrants stripping the defendant of all hope." It was not legal error, not was it in any way surprising, that the judge rejected that appeal out of hand, considering that it was made on behalf of a person who had stripped two women of their lives, the second murder occurring while he was at liberty on parole from his life sentence for the first murder. The defendant's disappointment at the consecutive sentences does not amount to legal prejudice.

The defendant's extreme claim of entitlement to a dismissal of the second indictment against him by reason of the delay in the resentencing is totally without legal foundation and is equally without merit on any other consideration. In *Bozza* v. *United States*, 330 U.S. 160, 166-167 (1947), the Court said: "This Court has rejected the 'doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence.' *In re Bonner*, [151 U.S. 242, 260 (1894)]. The Constitution does not require that sentencing should be a game in which a wrong move by the judge [or, as in this case, by the prosecutor,] means immunity for the prisoner."

*Judgment affirmed.*