NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-149                                        Appeals Court

        CHARLES DOUCETTE  vs.  MASSACHUSETTS PAROLE BOARD.


                      No. 13-P-149.

        Essex.      April 4, 2014. - October 29, 2014.

          Present:  Berry, Katzmann, & Sullivan, JJ.


Parole.  Administrative Law, Adjudicatory proceeding, Decision,
     Evidence, Failure to raise issue before agency, Hearing,
     Regulations.  Constitutional Law, Delay in rendering
     decision, Impartial tribunal, Parole.  Due Process of Law,
     Administrative hearing, Delay in rendering decision,
     Hearing, Parole.  Practice, Civil, Action in nature of
     certiorari, Failure to raise issue, Hearsay, Motion to
     dismiss, Relief in the nature of certiorari, Review of
     administrative action, Waiver.  Waiver.  Evidence, Absence
     of witness, Administrative proceeding, Hearsay, Police
     report.



        Civil action commenced in the Superior Court Department on
May 18, 2012.

        A motion to dismiss was heard by Richard E. Welch, III, J.


        Eitan Goldberg for the plaintiff.
        Christopher Hurld, Assistant Attorney General, for the
defendant.

SULLIVAN, J.  Charles Doucette appeals from the dismissal of his complaint challenging the decision of the Massachusetts Parole Board (board) revoking his parole.  Doucette proceeds on two fronts -- a civil rights claim asserting that the board violated due process in the conduct of the revocation proceedings, and a claim in the nature of certiorari seeking review of the merits of the board's decision.  See 42 U.S.C. § 1983; G. L. c. 249, § 4.  We conclude that the procedural irregularities in the revocation proceedings do not rise to the level of a due process violation, and that the revocation decision was not arbitrary or capricious.  Accordingly, we affirm.

Background.  On February 20, 2007, Doucette was released on parole from a life sentence for murder in the second degree.  According to the conditions of parole, Doucette was required, among other things, to conduct himself responsibly and obey all laws, attend Alcoholics Anonymous (AA) meetings three times per week, notify and seek permission from his parole officer regarding any change in residence or living situation, avoid persons known to have violated the law, comply with all special instructions given by his parole officer, and pay a monthly supervision fee.

Four years later, Doucette was arrested and charged with assault with a dangerous weapon, intimidation of a witness, and

threats, charges which arose from an incident with his then girlfriend.  A parole violation detainer issued, listing violations based on this incident, as well as other violations previously noted by his parole officer.  These violations included the failure to attend AA meetings, notify his parole officer and seek permission before allowing his landlord's daughter to live in his apartment, follow the advice of his parole officer to end the relationship with his girlfriend, and pay his monthly supervision fee.

In accordance with 120 Code Mass. Regs. § 303.06 (1997), a hearing examiner conducted a preliminary revocation hearing within fifteen days of the arrest.  The hearing examiner recommended revocation in a written decision.  He found that Doucette had violated various provisions of his parole by (1) engaging in irresponsible conduct by virtue of the new arrest, by having a restraining order issued against him, by failing to end the relationship with his former girlfriend as advised by his parole officer, and by permitting his landlord's daughter to stay in his residence without his parole officer's permission; and (2) violating special conditions of parole by failing to attend AA meetings and failing to pay supervision fees.  A decision revoking parole for these reasons was signed by the

board's chair on March 23, 2011.[1]  However, neither the hearing
examiner's decision nor the chair's written decision was
provided to Doucette.

On May 26, 2011, after a jury trial, Doucette was acquitted
of all charges.  By agreement, the final revocation hearing,
which normally must be held sixty days from the date of service
of a parole violation warrant, was postponed until after the
trial.  See 120 Code Mass. Regs. § 303.18 (1997).  The final
revocation hearing was held on July 20, 2011, fifty-five days
after the trial concluded.  In accordance with the board's
regulations, the hearing was held before a panel of the board,
but was referred to the full board for a vote.  See 120 Code
Mass. Regs. § 303.17(2) (1997) (full board vote required in
revocation proceeding involving a life sentence).  The full
board voted unanimously to revoke Doucette's parole on November
10, 2011, but did not notify Doucette.

Doucette filed a writ of mandamus to compel a final
decision on January 9, 2012.  The final decision, which simply
recited by title the violations found in the preliminary
revocation decision, was signed by the board's chair on January
13, 2012.  The hearing examiner's findings, the March 23, 2011,

---

[1] The hearing examiner had also found that the landlord's
daughter had a criminal record, and, therefore, that Doucette
had violated parole by associating with a person with a criminal
record.  The board did not sustain this violation.

preliminary decision, and the January 13, 2012, final decision were provided to Doucette on January 13, 2012. Doucette's subsequent appeal and motion for reconsideration were denied by the board without further explanation, whereupon he filed the present action in Superior Court, which entered judgment for the board. On appeal, Doucette argues that the board demonstrated bias against him; his rights to due process were violated; and the board's decision to revoke his parole was arbitrary and capricious.

Discussion. 1. Standard of review. Although the case was decided on a motion filed pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), both parties relied on matters outside the pleadings, and the motion judge appears to have considered them as well.[2] Accordingly, we treat Doucette's due process claims brought pursuant to 42 U.S.C. § 1983 as though they had come before us on the record pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). See rule 12(b) ("If, on any motion asserting the defense numbered [6], to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the

---

[2] The parties agree on appeal that discovery as to the due process claims has concluded and that the record on those claims is complete except for Doucette's request for additional discovery related to his claim of bias. As is discussed more fully infra, the bias claim was properly dismissed for reasons unrelated to this factual inquiry.

motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); Cousineau v. Laramee, 388 Mass. 859, 860 n.2 (1983).  Certiorari review of the merits of the board's decision pursuant to G. L. c. 249, § 4, is based on general principles of certiorari review and the administrative record.  See notes 8, 10, infra.

2.  Bias.  Doucette asserts that he was denied a neutral and detached hearing body free from bias against him because the Boston Globe reported that shortly after his arrest in February, 2011, the chair of the board said to a reporter that the revocation proceeding "gives us the opportunity to return Mr. Doucette to prison for life."[3]  This, Doucette maintains, indicates that the chair had prejudged the case.  We agree that this type of statement, if made, would be improper.  See Doe, Sex Offender Registry Bd. No. 29481 v. Sex Offender Registry Bd., 84 Mass. App. Ct. 537, 539-543 (2013) (comments posted by hearing officer on social media indicative of bias constituted due process violation).  We reject the board's argument that

---

[3] Because there was no discovery on this claim, we consider the statements attributed to the chair not for their truth, but for the fact that the article placed Doucette on notice of the bias claim.

extrajudicial influence is the sole form of bias warranting

relief.  See ibid.[4]

While these allegations are material, the claim of bias is

waived.  As Doucette's complaint makes clear, the newspaper

report was sufficient to place him on notice of a bias claim.

Doucette did not move to recuse the chair at either of his

revocation hearings, in his appeal to the board, or in his

motion for reconsideration before the board.  There is no

suggestion in the record that the evidence of bias is newly

discovered.  Compare id. at 539.  "A party having knowledge of

facts possibly indicating bias or prejudice on the part of an

arbitrator, referee, juror or other person having similar

functions cannot remain silent and thereafter on that ground

successfully object to the decision.  Fox v. Hazelton, 10 Pick.

275 [1830].  Hallock v. Franklin, 2 Met. 558, 560 [1841].

Commonwealth Tobacco Co. v. Alliance Ins. Co., 238 Mass. 514,

516 [1921], and cases cited.  Donoghue v. Holyoke Street

Railway, 246 Mass. 485, 494 [1923]."  Thomajanian v. Odabshian,

272 Mass. 19, 23 (1930).  "To preserve an issue for appeal from

an agency's decision, a party must raise the issue before the

agency."  Catlin v. Board of Registration of Architects, 414

_____

[4] The board's regulations require that a member of the board "withdraw from participating and abstain from voting in any case on the basis of personal involvement in the case or for any other reason which might prevent that member from making an impartial decision."  120 Code Mass. Regs. § 300.02(4) (1997).

Mass. 1, 7 n.7 (1992). See Rivas v. Chelsea Hous. Authy., 464 Mass. 329, 336 (2013) ("arguments not made before an administrative agency generally cannot be raised on appeal"). To the extent that Doucette now claims a general bias against him or against his release on the part of the entire board, that claim also was not raised before the board.

3. Due process. Because parole revocation results in the loss of liberty, the manner in which parole is revoked must comport with due process. See Morrissey v. Brewer, 408 U.S. 471, 480-482 (1972) (Morrissey); Doe v. Massachusetts Parole Bd., 82 Mass. App. Ct. 851, 858 (2012). The minimum requirements of due process in a parole revocation proceeding are:

> "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

Morrissey, 408 U.S. at 489. Doucette claims that he (a) was denied the opportunity to confront an adverse witness at the preliminary hearing, (b) was not provided written notification of the reasons for revocation in a timely manner, (c) was not provided with discovery in advance of the final hearing, and (d)

was not provided an adequate written statement of the reasons for the denial of his administrative appeal.

a. _Adverse witness_. In making the initial recommendation to revoke parole, the hearing examiner at the preliminary hearing relied, in part, on parole officer reports, police reports, and affidavits filed in connection with an application for an abuse prevention order summarizing the allegations of Doucette's former girlfriend. Doucette maintains that the use of the police reports and other documents deprived him of the opportunity to confront and cross-examine his former girlfriend at the preliminary hearing.[5]

_Morrissey_ did not "write a code of procedure," 408 U.S. at 488, for preliminary revocation proceedings, which are intended to explore whether there is "probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation." _Id_. at 485. The board's regulations do provide, however, that the parolee "may request that the Hearing Examiner obtain the presence of persons who have given information upon which revocation may be based," and that the "Examiner shall request the attendance of such adverse witnesses at the preliminary parole revocation hearing unless

---

[5] Doucette alleges in the complaint that he requested her presence, and the board denied his request through its counsel. The board has treated this allegation as true both below and on appeal, and we therefore address it. We note, however, that the hearing examiner's report states that no such request was made.

. . . the Hearing Examiner finds good cause for the witness' non-attendance."  120 Code Mass. Regs. § 303.11(6) (1997).  See Morrissey, supra at 487, 489.

Because both probation and parole revocation proceedings involve the potential loss of liberty, see Morrissey, 408 U.S. at 482; Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Commonwealth v. Thissel, 457 Mass. 191, 195 (2010), we may look to the cases involving probation revocation for guidance as to how the "good cause" requirement may be satisfied.  The Supreme Judicial Court has held that reliable hearsay satisfies the good cause requirement.  See Commonwealth v. Bukin, 467 Mass. 516, 522 (2014) (in probation revocation proceedings, "substantial reliability" of hearsay satisfies the "good cause" standard).  See also Commonwealth v. Durling, 407 Mass. 108, 116 (1990) (detailing the administrative burdens of holding full evidentiary hearings in all probation violation cases); Commonwealth v. Negron, 441 Mass. 685, 691 (2004) ("if reliable hearsay is presented, the good cause requirement is satisfied").  The use of police reports has long been recognized as appropriate in probation revocation proceedings, provided that the reports bear indicia of reliability.  See Commonwealth v. Durling, 407 Mass. at 117-118; Commonwealth v. Bukin, 467 Mass. at 520-521.

Doucette, who denied all wrongdoing, argues that his former girlfriend's accusations were demonstrably unreliable, as evidenced by the jury verdict and her testimony at trial. This argument overlooks the fact that the preliminary hearing occurred before the trial, and that the hearing examiner was required to assess reliability as of that time. Moreover, the burdens of proof at a criminal trial and a preliminary revocation hearing are substantially different. At a preliminary hearing, the standard is not reasonable doubt, but probable cause to conclude a violation was committed. See 120 Code Mass. Regs. § 303.13 (1997); Stefanik v. Board of Parole, 372 Mass. 726, 728-729 (1977).

Neither the hearing examiner who conducted the preliminary hearing nor the panel that conducted the final hearing made an express finding regarding the reliability of the police reports. As is discussed more fully below, it is also unclear on this record whether the hearing examiner or the board credited the reports or found a violation based simply on the fact of the arrest. However, in the final analysis, we discern no prejudice on this record. See generally Commonwealth v. Pariseau, 466 Mass. 805, 810-812 (2014) (requiring a showing of prejudice to sustain a due process claim). Doucette did not request the presence of the witness at his final revocation hearing, nor did he provide the trial transcript to the board. By failing to

renew his request at the final hearing, Doucette waived this due process issue as it pertains to the final hearing and the final decision to revoke his parole, thus undercutting any claim of prejudice. See Commonwealth v. Morse, 50 Mass. App. Ct. 582, 589 (2000); Commonwealth v. Bynoe, 85 Mass. App. Ct. 13, 23 n.12 (2014).

b. Timely service of decision. Doucette claims that the board's considerable delay in sending him written notice of its decision was a violation of due process, and that he is therefore entitled to release. By agreement, the final revocation hearing was held within sixty days after the conclusion of Doucette's trial. See 120 Code Mass. Regs. § 303.18 (1997). Delay between a revocation hearing and the distribution of a written decision is not a per se due process violation. See Morrissey, supra at 488; People ex rel. Haskins v. Waters, 87 A.D.2d 657 (N.Y. App. Div. 1982). A delay constitutes a due process violation only if it is "fundamentally unfair." Commonwealth v. Blake, 454 Mass. 267, 277 (2009) (Ireland. J., concurring). A showing of prejudice is required. See Commonwealth v. Pariseau, 466 Mass. at 812.

The board's regulations require that it send a written notice and summary of reasons within twenty-one days of the decision. 120 Code Mass. Regs. § 303.26 (1997). Here, in violation of the board's regulations, the written decision was

issued 177 days after the hearing, and sixty-four days after the decision dated November 10, 2011. We "do[] not condone the length of delay in this case," but conclude that it did not "amount to legal prejudice that permits a conclusion that a due process violation . . . occurred." Commonwealth v. Blake, 454 Mass. at 280 (Ireland, J., concurring). Doucette has pointed to no discernable prejudice warranting release. See ibid. (Ireland, J., concurring); Commonwealth v. Pariseau, 466 Mass. at 810-812. See also Commonwealth v. Imbruglia, 377 Mass. 682, 688 (1979); Commonwealth v. McInerney, 380 Mass. 59, 68 (1980) ("[D]isappointment . . . does not amount to legal prejudice"). In the absence of prejudice, the appropriate remedy is to seek a prompt decision, which Doucette did by filing an action in the nature of mandamus. Compare Commonwealth v. Pariseau, supra at 814.[6]

---

[6] In his complaint and on appeal, Doucette frames his argument concerning the violation of the regulation solely as a due process argument. We recognize that we have, in other contexts, decided analogous cases by reference to a regulation rather than reach the due process question. See, e.g., Royce v. Commissioner of Correction, 390 Mass. 425 (1983) (complaint for declaratory relief). In the absence of sustained appellate argument, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we decline to decide whether certiorari relief may be had concerning the violation of a regulation without a showing of prejudice. See generally State Bd. of Retirement v. Bulger, 446 Mass. 169, 173 (2006) ("Certiorari allows a court to correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff") (quotations omitted). Compare Haverty v. Commissioner of Correction, 437 Mass. 737, 740 (2002), S.C., 440 Mass. 1 (2003)

c.  Discovery.  Doucette claims that the board failed to provide him with discovery in advance of the final hearing, in violation of his right to due process of law and the board's regulations.  See 120 Code Mass. Regs. § 303.22.  On June 29, 2011, before the final revocation hearing, Doucette's counsel sent a letter to the board listing the documents that had been provided to him and requesting any additional evidence that "will be presented or relied upon" by the board at the final hearing.  The board responded, and sent a copy of the hearing examiner's report to Doucette's counsel.  Doucette was given a complete response to his request.  Based on questions that he claims were asked during the final revocation hearing, Doucette now contends that his entire criminal and psychiatric history should have been produced.  The transcript of the final hearing contains significant gaps (inaudible portions), and the record before us is insufficient to support Doucette's claim in this respect.[7]  So far as we can tell, no request was made at hearing for additional documents.  No claim of prejudice was made at that time.  Doucette answered the questions posed to him.  See Mass.R.A.P. 16(a)(4) (argument in brief shall cite to "parts of the record relied on"); Arch Med. Assocs. v. Bartlett Health

---

(affirming summary judgment on behalf of a class of prisoners held in segregation; decision based on regulatory violation rather than due process claim).

[7] There was no request to reconstruct the record.

Enterprises, Inc., 32 Mass. App. Ct. 404, 406 (1992) ("Errors that are not disclosed by the record offer no basis for reversal"). To the extent he argues that the board looked to his past criminal history, Doucette cannot have been surprised by the inquiry, and was fully aware of his own criminal history. No due process violation has been shown, and even if it were, we discern no prejudice.

d. Written statement. The minimum requirements of due process include "a written statement by the factfinders as to the evidence relied on and reasons for revoking . . . parole." Commonwealth v. Durling, 407 Mass. at 113, quoting from Gagnon v. Scarpelli, 411 U.S. at 786. See 120 Code Mass. Regs. § 303.26 (1997). Doucette does not challenge the adequacy of the statement of reasons given in connection with the preliminary or final revocation decisions. Rather, he asserts that he was denied due process because his appeal to the board and motion for reconsideration were denied without a statement of reasons. These assertions are unaccompanied by citation to authority, and we have found none to suggest that once written findings were issued, due process requires further findings and rulings with respect to administrative appeals filed after the final revocation decision has been made. See 120 Code Mass. Regs. § 304 (1997). See generally McLellan v. Acting Superintendent, Mass. Correctional Inst., Cedar Junction, 29

Mass. App. Ct. 122, 127 (1990) (detailed charges formed a sufficient basis for review).

4. Parole violations. Doucette claims that the board acted in an arbitrary and capricious manner and violated his right to due process when it revoked his parole on the basis of the arrest on charges of which he was ultimately acquitted, and that the board abused its discretion in revoking his parole based on certain violations of his parole conditions.

a. Certiorari review. Decisions of the board are not subject to review under G. L. c. 30A. See G. L. c. 30A, § 1C. Certiorari review is available where there is "(1) a judicial or quasi judicial proceeding (2) from which there is no other reasonably adequate remedy (3) to correct substantial error of law apparent on the record (4) that has resulted in manifest injustice to the plaintiff or an adverse impact on the real interests of the general public." State Bd. of Retirement v. Woodward, 446 Mass. 698, 703-704 (2006). See, e.g., Ciampi v. Commissioner of Correction, 452 Mass. 162, 163 (2008) (certiorari action to challenge validity of Department of Correction regulations and disciplinary actions taken pursuant to the regulations).[8] "On certiorari review, the Superior

---

[8] Certiorari is the appropriate method of review of parole revocation decisions in a number of States. See, e.g., Sellers v. State, 586 So. 2d 994, 995 (Ala. Crim. App. 1991) (in absence of statutory right to review of administrative decisions,

Court's role is to examine the record . . . and to 'correct substantial errors of law apparent on the record adversely affecting material rights.'"  Firearms Records Bureau v. Simkin, 466 Mass. 168, 180 (2013), quoting from Cambridge Hous. Authy.

---

"certiorari is the appropriate remedy for review of [revocation] actions").  Other States imply a right of judicial review of parole revocation decisions under the State administrative procedure act by means of administrative procedures available to review any agency decision.  See Loach v. Pennsylvania Bd. of Probation & Parole, 57 A.3d 210, 212 (Pa. Commw. Ct. 2012); Pisano v. Shillinger, 835 P.2d 1136, 1138-1140 (Wyo. 1992).  Some States entertain a writ of habeas corpus.  See People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971); Wright v. Ghee, 74 Ohio St. 3d 465, 466-467 (1996).  Among those States that have allowed certiorari review of a parole revocation decision, the standard of review has been articulated in various but similar ways.  See Alabama Bd. of Pardons & Paroles v. Williams, 935 So. 2d 478, 484 (Ala. Crim. App. 2005), cert. denied, 547 U.S. 1181 (2006) ("The limited function of [certiorari] review is to determine whether the act in question was supported by any substantial evidence, or whether findings and conclusions are contrary to uncontradicted evidence, or whether there was an improper application of the findings viewed in a legal sense") (quotations omitted); Pfister v. Iowa Dist. Ct. for Polk County, 688 N.W.2d 790, 794 (Iowa 2004), quoting from State Pub. Defender v. Iowa Dist. Ct. for Black Hawk County, 633 N.W.2d 280, 282 (Iowa 2001) ("A writ of certiorari lies where a lower board . . . has acted illegally . . . . Illegality exists when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law"); Stewart v. Schofield, 368 S.W.3d 457, 463 (Tenn. 2012) ("review under the common law writ of certiorari is limited to determining whether the 'inferior tribunal, board, or officer,' Tenn. Code Ann. § 27-8-101, exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently"); State ex rel. Thorson v. Schwarz, 274 Wis. 2d 1, 7 (2004) ("Our review of a parole revocation by certiorari is limited to four inquiries: (1) whether the agency stayed within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable, representing its will, not its judgment; and (4) whether the evidence was such that [the agency] might reasonably make the order or determination in question").

v. _Civil Serv. Commn._, 7 Mass. App. Ct. 586, 587 (1979). In cases reviewing the decisions of administrative bodies which, like the parole board, are accorded considerable deference, see _Barriere_ v. _Hubbard_, 47 Mass. App. Ct. 79, 83 (1999), the arbitrary and capricious standard of review applies.[9] See _Doe_ v. _Superintendent of Schs. of Stoughton_, 437 Mass. 1, 5 (2002); _Firearms Records Bureau_ v. _Simkin_, 466 Mass. at 179. See also 2 Cohen, Law of Probation and Parole § 29:17, at 29-18 (2d ed. 1999) ("most courts subscribe to the view that a parole board['s] . . . decisions are entitled to great deference by the courts"). We review the administrative record provided by the parties.[10]

---

[9] In this respect certiorari review of administrative decisions for which G. L. c. 30A review is unavailable is substantially similar to c. 30A review. See, e.g., _Hoffer_ v. _Board of Registration in Med._, 461 Mass. 451, 458 n.9 (2012). Compare _Rivas_ v. _Chelsea Hous. Authy._, 464 Mass. at 334.

[10] Because the board responded to the complaint by filing a rule 12(b)(6) motion, the board did not answer the complaint or file the administrative record, and no motion for judgment on the pleadings was filed pursuant to Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), as required by Superior Court Standing Order 1-96, as amended (2002). The parties did, however, submit certain portions of the administrative record, and the Superior Court judge had a near complete record upon which to make his decision. At oral argument the parties agreed that this court should conduct its review based on the administrative record as submitted, and expanded the record by agreement to include a complete copy of the parole conditions. In future cases, certiorari review should be conducted under rule 12(c), in accordance with Superior Court Standing Order 1-96, and not under rule 12(b)(6). Compare _Northborough Inn, LLC_ v. _Treatment Plant Bd. of Westborough_, 58 Mass. App. Ct. 670, 673 n.5 (2003).

b.  New arrest.  Noting that he was acquitted of the charges resulting from his girlfriend's allegations, Doucette argues that the board violated his right to due process by revoking his parole solely on the basis of an arrest, without regard to whether the events leading up to the arrest actually took place as charged.  At this final stage of the process the board must find by a preponderance of the evidence that the violation took place.  120 Code Mass. Regs. § 303.23(4) (1997). See Commonwealth v. Holmgren, 421 Mass. 224, 225-226 (1995) ("In a criminal case . . . the Commonwealth must prove the elements of each crime charged beyond a reasonable doubt.  In a [final] probation revocation hearing . . . it is proof by a preponderance of the evidence").  The finding of probable cause associated with the preliminary revocation decision, see 120 Code Mass. Regs. § 303.13 (1997), is no longer sufficient, nor is probable cause to arrest.  See Stefanik v. Board of Parole, 372 Mass. at 729.  Thus, Doucette argues, the decision was also arbitrary and capricious, warranting certiorari relief.[11]

The findings of the hearing examiner regarding the arrest are cryptic, and were not explicitly adopted by the board.  The board's final revocation decision, which merely lists the

_____

[11] To the extent Doucette maintains that the board's determination was arbitrary or capricious, it was his obligation to provide an adequate record, including the trial transcript, to the board.

violations and the board's vote, offers no explanation for its conclusions. The board did not address the reliability of the hearsay reports in its final decision. See Commonwealth v. Henderson, 82 Mass. App. Ct. 674, 676 (2012) (outlining factors to be considered in determining the reliability of hearsay evidence in probation revocation proceedings). Although a jury's not guilty finding at trial does not mean that the same evidence may not be considered and weighed by the board, it is indeed impossible to discern whether the board found by a preponderance of the evidence that Doucette committed the assault and made the threats with which he was charged, or whether the board simply found that he was arrested. See Stokes v. Commissioner of Correction, 26 Mass. App. Ct. 585, 587 (1988) ("While it may be implicit in the [disciplinary] board's disposition, it is impossible to tell from the face of the decision in any particular instance whether the board believed all, some, or none [of] the contents of the officer's report").

The failure of the board to make clear findings thus frustrates the purpose of the due process protections afforded by Morrissey. We need not reach the question of the validity of this ground for revocation, however, because the other bases

upon which the board rested its decision, including Doucette's admissions, were sufficient to warrant revocation of parole.[12]

c. _Remaining violations_. Doucette maintains that the evidence of the other violations was insufficient to warrant revocation. The board maintains that it was entitled to revoke parole based upon these violations, noting that "nothing requires the [board] to ignore parole violations or impose less severe sanctions."

The conditions of Doucette's parole required him to obey all special conditions, heed the requests of his parole officer, and avoid irresponsible conduct. Doucette admits that he failed to regularly attend AA meetings, even though attending three AA meetings per week was an explicit condition of his parole.[13] As to the relationship with his girlfriend, it is uncontested that his parole officer specifically warned him to end the relationship due to the woman's struggles with alcohol use, and that Doucette engaged in irresponsible conduct to the extent

---

[12] Our review of the board's decision leads us to conclude that the board based its revocation decision on Doucette's overall pattern of irresponsible behavior, without regard to the arrest. In future cases in which multiple grounds for revocation are presented, review of the board's decision would be aided by a clear designation by the board of the reasons for revocation, and a statement as to which grounds form a separate and adequate ground for revocation.

[13] In his written submission to the board Doucette admitted that he frequently signed into AA meetings and left, stating that he was tired after working in construction during the day.

that he maintained the relationship.  It was this relationship which led to Doucette's arrest outside a bar and the related charges that triggered the issuance of the parole violation detainer.[14]  Finally, Doucette does not contest that he allowed a person to live in his residence without notifying or gaining the approval of his parole officer, despite the condition that his parole officer must approve any such changes.[15]

Doucette offered explanations and mitigating factors with respect to each of the violations.  The board, however, was entitled to weigh the evidence, assess credibility, and make the final determination on whether to revoke parole or consider other alternatives.  See Greenman v. Massachusetts Parole Bd., 405 Mass. 384, 387 (1989).  We cannot say the board's determination that Doucette violated his parole was arbitrary or capricious.  These violations alone, without reference to the arrest or restraining order, are sufficient to support the

---

[14] It is undisputed that Doucette remained involved with the woman who, according to him, had a serious drinking problem.  He testified that he resolved to end the relationship, packed up her belongings and brought them to a bar and left them on her vehicle.  He was arrested during the ensuing confrontation.  The hearing examiner's rationale for revocation relied primarily on the fact that Doucette had maintained this relationship at a time when he also failed to attend AA meetings.

[15] The board also found that Doucette failed to pay his mandatory parole supervision fee of eighty dollars per month.  This violation was uncontested, and evidence was sufficient to show that Doucette so violated his parole.  We do not rely upon this violation in affirming the judgment.

board's determination by a preponderance of the evidence that Doucette violated conditions of his parole. See Commonwealth v. Holmgren, 421 Mass. at 226.[16]

Judgment affirmed.

---

[16] Doucette also argues that revoking parole on the basis of these violations is barred by the doctrines of waiver, res judicata, and collateral estoppel, since (he argues) this conduct was already addressed by his parole officer. The defenses of collateral estoppel (issue preclusion) and res judicata (encompassing both issue preclusion and claim preclusion) require a final judgment on the merits. See Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005) (claim preclusion); Dowd v. Morin, 18 Mass. App. Ct. 786, 793-794 & n.15 (1984). The advice of a parole officer does not constitute a judgment.

The doctrine of waiver is also inapplicable. The fact that the parole officer (or parole board) chose not to seek to violate Doucette's parole at the first opportunity does not constitute a waiver of the board's authority to make parole violation determinations. See G. L. c. 27, § 5 (granting revocation powers to the board). Finally, Doucette's claims under the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, § 11H, were properly dismissed because the Commonwealth and its agencies are not persons within the meaning of the MCRA. Williams v. O'Brien, 78 Mass. App. Ct. 169, 173 (2010).