COMMONWEALTH *vs.* ARTHUR DAVIS.

Middlesex. April 4, 1991. - July 16, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Criminal*, New trial, Postconviction relief, Appeal, Capital case, Request for fees and costs. *Statute*, Construction.

A criminal defendant, convicted of murder in the first degree, whose conviction had been reviewed under the provisions of G. L. c. 278, § 33E, was not entitled to review of the denial of his postappeal motion under G. L. c. 261, § 27C (4), for extra fees and costs for scientific testing, without first obtaining the leave of a single justice of this court pursuant to G. L. c. 278, § 33E. [683-684]

A motion for costs of scientific testing in contemplation of a possible new trial after a criminal defendant's conviction and unsuccessful appeal is not cognizable under the provisions of G. L. c. 261, § 27C (4), because the funds sought are not related to a pending trial or appeal. [684]

INDICTMENT found and returned in the Superior Court Department on March 14, 1985.

Following the decision of this court in 403 Mass. 575 (1988), a motion for costs of scientific testing of certain physical evidence was heard by *Robert W. Banks*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*James W. Sahakian*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted the defendant of murder in the first degree, and we affirmed the conviction. *Commonwealth v. Davis*, 403 Mass. 575 (1988). On March 16, 1990, the defendant filed a motion in Superior Court for scientific testing of certain physical evidence in the Commonwealth's possession. Professing his indigence, the defendant also moved

for the award of $3,000 to cover the cost of the testing pursuant to G. L. c. 261, § 27C (4) (1990 ed.) (regarding costs to indigents).[1] The trial judge allowed the motion for testing, but denied the motion for costs. The defendant appealed from the denial of the motion for costs to the Appeals Court.[2] We transferred the case to this court on our own motion, and we now reject the defendant's appeal for procedural reasons.

The facts are set out in detail in *Commonwealth v. Davis,* *supra.* Here we recite only those facts necessary to decide this appeal. The victim's body was found, naked and badly beaten, in an outdoor stairwell at Lowell City Hall on February 10, 1985. Several strands of hair were found in the victim's hands. At trial, the Commonwealth offered the expert testimony of a chemist who had examined the hair. According to the expert, the hair had not come from the head of the defendant, but may have come from the victim's own head.[3] The trial ended on March 25, 1986.

In 1988, according to the defendant's motion, geneticists announced the discovery of a new technique for the analysis

---

[1]General Laws c. 261, § 27C (4), reads in relevant part: "If the court makes a finding of indigency . . . it shall not deny any request with respect to extra fees and costs if it finds the document, service or object is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he would have if he were financially able to pay."

The defendant submitted an affidavit stating that he had been found indigent by the court prior to his trial and that he still lacked the means to pay for the tests. The Commonwealth does not contest these assertions.

[2]The case was docketed so as to be heard before a panel of the Appeals Court. The Commonwealth notes that G. L. c. 261, § 27D (1990 ed.), directs an appeal from a Superior Court judge's denial of costs under c. 261, § 27C (4), to a single justice of the Appeals Court. Our conclusion in this case makes it unnecessary to decide the effect of this procedural impropriety.

[3]In our earlier opinion, *Commonwealth v. Davis, supra,* we stated in the margin that "the hair [removed from the victim's hands] was found to be the victim's own hair." *Id.* at 583 n.14. The defendant argues that expert testimony at trial suggested only that the hair was "consistent with being" the victim's own. The distinction does not affect the outcome of this appeal.

of DNA in hair.[4] The motion suggested that this technique, the polymerase chain reaction method (PCR method), "can exclude with 100% certainty any particular individual as being the donor of any particular strand of hair." The defendant also submitted the affidavit of a scientist who concluded, "[T]here is a high degree of likelihood that the PCR method of testing would obtain DNA from each of the strands of hair [discovered in the victim's hands] . . . and that the donor of each strand could be identified by the DNA thus obtained."

Invoking the statute authorizing the award of certain costs to indigents, G. L. c. 261, § 27C (4), the defendant moved for the award of $3,000 to cover the expense of PCR testing. The results, he argued, would establish that the hair in the victim's hands came from neither the defendant nor the victim, but from a third person — the murderer, the defendant implied. Thus, the defendant asserted that the test results would constitute newly discovered evidence sufficient to support a motion for a new trial. See *Commonwealth v. Moore,* 408 Mass. 117, 126-127 (1990), quoting *Commonwealth v. Grace,* 397 Mass. 303, 305-306 (1986) (standards governing grant of new trial based on newly discovered evidence).

The judge denied the motion, finding that the defendant's trial counsel ably exposed deficiencies in the Commonwealth's forensic evidence, and that the results of the PCR testing would merely be cumulative of evidence showing that the hair in the victim's hands was not the defendant's. In addition, the judge found that DNA testing was available at the time of trial. The judge allowed the defendant's motion for access to the evidence, however, if the defendant wished to finance the testing himself. On appeal, the defendant ar-

---

[4]"Deoxyribonucleic acid (DNA) is the material that determines genetic characteristics of life forms. Every cell that has a nucleus contains DNA. The DNA of each person, except for identical twins, is unique, although, as might be expected, there are substantial similarities in the DNA in any species. The variation in human DNA is what makes an individual's DNA unique and permits meaningful DNA testing." *Commonwealth v. Curnin,* 409 Mass. 218, 218 n.1 (1991).

gues that the judge erred in denying his petition for "extra fees and costs" under c. 261, § 27C (4), because the PCR testing was "reasonably necessary to prevent the [defendant] from being subjected to a disadvantage in preparing or presenting his case adequately, in comparison with one who could afford to pay for the preparation which the case reasonably requires." *Commonwealth* v. *Lockley*, 381 Mass. 156, 160-161 (1980) (standard for deciding whether indigent's request for costs should be granted).

The case is not properly before this court because the defendant failed to comply with the "gatekeeper" provision of G. L. c. 278, § 33E (1990 ed.).[5] That provision expressly prohibits an appeal from "any motion" filed in the Superior Court after § 33E review without the leave of a single justice of this court. "Interests of judicial economy are best served by having a single justice 'screen out' postconviction motions which do not present a 'new or substantial question.' In this manner, a full quorum of the Supreme Judicial Court is spared the task of hearing frivolous or duplicative claims." *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 744-745 (1986). See *Leaster* v. *Commonwealth*, 385 Mass. 547 (1982). See also *Commonwealth* v. *Lanoue*, 409 Mass. 1, 8 (1990) (O'Connor, J., concurring).

The defendant notes that G. L. c. 261, § 27D, directs his appeal to the Appeals Court. Section 27D provides that, where a Superior Court judge denies a motion for the Commonwealth to pay an indigent's costs pursuant to c. 261, § 27C, the applicant's appeal lies to the single justice of the Appeals Court. See note 2, *supra*. Thus, the two statutes — c. 261, § 27D, and c. 278, § 33E — appear to steer the defendant's appeal to different courts. In this situation, we hold that the gatekeeper provision of § 33E, which specifically ad-

---

[5]The relevant portion of § 33E reads: "If any motion [in a capital case] is filed in the superior court after rescript, no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court."

dresses postconviction motions brought by defendants in capital cases, is applicable. See *Boston* v. *Board of Educ.*, 392 Mass. 788, 792 (1984) (allegedly inconsistent statutes are construed to give reasonable effect to both and to create a consistent body of law).

The defendant's appeal is therefore dismissed. Because the defendant's motion raises issues that are likely to reoccur in the future, however, we express our opinion on the defendant's substantive claim.

Chapter 261, § 27C (4), assures an indigent defendant of those costs "reasonably necessary to assure [him] as effective a prosecution, defense or appeal as he would have if he were financially able to pay." The defendant's motion for costs, however, is not aimed at a "prosecution, defense or appeal"; it contemplates a possible motion for a new trial after the defendant's initial, unsuccessful defense and appeal.[6] Thus, the defendant's motion for the costs of PCR testing is not cognizable under c. 261, § 27C (4), because the funds sought are not related to a pending trial or appeal.

We acknowledge that § 27C may work a hardship on convicted indigents seeking the funds to carry out a newly discovered scientific technique which could yield exculpatory evidence. In such circumstances, funds to pay for scientific testing under § 27C are not available until a new trial is granted, yet there may be no grounds to move for a new trial without the test results. See *Commonwealth* v. *Pope*, 392 Mass. 493, 497 n.5 (1984) (grounds for seeking new trial must be raised in motion); Mass. R. Crim. P. 30 (b), (c) (2), 378 Mass. 900 (1979). Where the Legislature has chosen not to fund certain procedures not constitutionally mandated, however, this court may not rewrite the statute to do so.[7]

---

[6] Of course a motion for postconviction relief under Mass. R. Crim. P. 30 (a) and (b), 378 Mass. 900 (1979), is distinguishable from an "appeal," which is ordinarily defined as "[r]esort to a superior (i.e. appellate) court to review the decision of an inferior (i.e. trial) court or administrative agency." Black's Law Dictionary 96 (6th ed. 1990).

[7] We note that the State and Federal Constitutions do not require the Commonwealth to fund postconviction investigations that may reveal ex-

This appeal is dismissed because it is not properly before us, having never been allowed by the single justice of this court as § 33E requires. Although the defendant is free to seek an appeal before the single justice, he is unlikely to succeed there since the single justice will be guided by this opinion. Of course, nothing in this opinion prevents the defendant from carrying out the PCR testing at his own expense.

*So ordered.*

culpatory evidence. If indigent prisoners have no due process or equal protection right to appointed counsel in preparing or presenting a motion for new trial, *Commonwealth* v. *Conceicao*, 388 Mass. 255, 261 (1983); *Dirring* v. *United States*, 353 F.2d 519, 520 (1st Cir. 1965); *Germany* v. *Vance*, 673 F.Supp. 1143, 1147 (D. Mass. 1987); see *Ross* v. *Moffitt*, 417 U.S. 600, 609-616 (1974) (State not required to provide counsel on discretionary appeal to State supreme court), then surely they have no constitutional right to State funding to support investigations in anticipation of such a motion. "The duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to present his claims fairly in the context of the State's appellate process." *Id.* at 616.