NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12203


RICHARD CROWELL  vs.  MASSACHUSETTS PAROLE BOARD.



Suffolk.     January 6, 2017. - May 15, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Parole.  Practice, Criminal, Parole.  Americans with
    Disabilities Act.  Practice, Civil, Action in nature of
    certiorari, Motion to dismiss.




Civil action commenced in the Superior Court Department on
April 2, 2014.

A motion to dismiss was heard by Raffi N. Yessayan, J., and
a motion for reconsideration was considered by him.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Tabitha Cohen (John D. Fitzpatrick also present) for the
plaintiff.
Todd M. Blume, Assistant Attorney General, for the
defendant.
James R. Pingeon, for American Civil Liberties Union of
Massachusetts & others, amici curiae, submitted a brief.


BUDD, J.  On April 2, 2014, the plaintiff, Richard Crowell,

filed a complaint in the nature of certiorari in the Superior

Court, alleging that, in denying his petition for parole, the Parole Board (board) had violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (ADA), and cognate State provisions, art. 114 of the Amendments to the Massachusetts Constitution and G. L. c. 93, § 103. A judge of that court allowed the board's motion to dismiss and denied the plaintiff's motion for reconsideration. We reverse and remand for further development of the record.[1] Further, we conclude that, contrary to the plaintiff's assertion, his commuted life sentence remains a "life sentence" within the meaning of 120 Code Mass. Regs. § 301.01(5) (1997).

Background. The limited record before us, presented in the form of exhibits to the plaintiff's complaint, includes the following facts, which are undisputed by the parties.

1. Prior parole proceedings. The plaintiff pleaded guilty to murder in the second degree in 1962 in connection with an armed robbery that resulted in a homicide.[2] He was sentenced to life imprisonment with the possibility of parole pursuant to

---

[1] We acknowledge the amicus brief of the American Civil Liberties Union of Massachusetts, the Center for Public Representation, the National Disability Rights Network, and Prisoners' Legal Services.

[2] The plaintiff was the getaway vehicle's driver.

G. L. c. 265, § 2.[3]  In 1974 the plaintiff's life sentence was commuted to one that was from "[thirty-six] years to life."  He was paroled in November, 1975.  Between 1975 and 1990 the plaintiff was returned to custody on five occasions (1977, 1980, 1982, 1989, and 1990) for failing to adhere to his conditions of parole, including repeated problems with alcohol and assaultive behavior.  In 1987 he sustained a traumatic brain injury (TBI), which caused deficiencies in his memory, speech, and cognition. He attributes the loss of his job while on parole as well as an exacerbation of his alcohol problems to TBI.

The plaintiff was denied parole following review hearings before the board in 1991, 1994, and 1997.  In 2003, he was again paroled on the condition that he complete a long-term residential program and attend Alcoholics Anonymous meetings at least three times per week.  Less than one month later, his parole was revoked for failure to complete the residential program.  He has been incarcerated since that time.

2.  2012 parole hearing and decision.  In August, 2012, the plaintiff had a review hearing before the board.  During that hearing, one of the board members noted that TBI had

---

[3] The plaintiff was also sentenced to serve from fifteen to twenty years for assault with intent to rob or murder, from three to five years for assault by means of a dangerous weapon, and from fifteen to twenty years for armed robbery, all to be served concurrently with his life sentence.

"caused cognitive functioning [and] emotional functioning deficits," resulting in uncooperative behavior that was "secondary to [the plaintiff's] brain injury." The board member stated that this was a chronic, life-long condition that "might get worse . . . [s]o [the plaintiff] would need to be in some sort of setting where [he] could be managed and cooperate with people forever." She also expressed concern about the fact that the programs the plaintiff's counsel had looked into were voluntary programs that would require his full cooperation.

Ultimately the board issued its decision denying the plaintiff parole, stating that the plaintiff "was unable to offer any concrete, viable release plan that could assure the [b]oard that he would be compliant on parole after his history of defiance and non-compliance" and that he "has not sought or achieved the rehabilitation necessary to live safely in the community." The board also stated, "Crowell was unable to address the concerns related to his combative attitude and . . . gave the clear impression that he feels entitled to parole . . . ." The board denied the plaintiff's request for reconsideration.

3. Certiorari action. On April 2, 2014, the plaintiff timely filed a complaint seeking certiorari review of the board's decision by way of G. L. c. 249, § 4, alleging that the board's denial was a violation of his rights under the ADA and

cognate State provisions, and that the board's decision to grant him a review hearing only every five years (rather than annually) was unlawful. He sought immediate release or a hearing at which the board would be prohibited from considering his disability as a reason to prevent him from being paroled. The plaintiff further asked the court to direct the board to use its resources to find an appropriate placement for him in the community.

The judge allowed the board's motion to dismiss, concluding that the board had not discriminated against the plaintiff in its decision denying him parole because it considered many factors, only one of which was his disability related to the TBI. The plaintiff appealed and obtained a brief stay of the appeal to pursue an unsuccessful motion for reconsideration on the limited issue whether he is serving a life sentence or a sentence for a term of years. We transferred the case from the Appeals Court on our own motion.

Discussion. 1. The motion to dismiss. We review a judge's order granting a motion to dismiss de novo. Boston Med. Ctr. Corp. v. Secretary of the Exec. Office of Health & Human Servs., 463 Mass. 447, 450 (2012). The plaintiff asserts that the motion judge erroneously allowed the board's motion to dismiss because the board failed first to file the administrative record pursuant to a standing order of the

Superior Court. Superior Court Standing Order 1-96(2) applies to actions in the nature of certiorari under G. L. c. 249, § 4, and requires the agency to file its administrative record within ninety days of service of the complaint.[4] It also extends the deadline for certain motions, including those brought under Mass. R. Civ. P. 12 (b) and (e), 365 Mass. 754 (1974), to twenty days after service of the record. The board contends that it

---

[4] The relevant portions of Superior Court Standing Order 1-96 provide:

> "2.  The administrative agency whose proceedings are to be judicially reviewed shall, by way of answer, file the original or certified copy of the record of the proceeding . . . within ninety (90) days after service upon it of the [c]omplaint. . . .

> "3.  The following motions raising preliminary matters must be served . . . not later than twenty (20) days after service of the record by the administrative agency.

> "(a) Motions authorized by Mass. R. Civ. P. 12(b) or 12(e).

> ". . . .

> "Any party failing to serve such a motion within the prescribed time limit, or within any court-ordered extension, shall be deemed to have waived any such motion . . . and the case shall proceed solely on the basis of the record. . . .

> "4.  A claim for judicial review shall be resolved through a motion for judgment on the pleadings, Mass. R. Civ. P. 12(c), . . . except as otherwise provided by this [s]tanding [o]rder, unless the [c]ourt's decision on any motion specified in part 3 above has made such a resolution inappropriate. . . ."

complied with both Superior Court Standing Order 1-96 and rule 12 (b) ("A motion making any of these defenses shall be made before pleading . . ."). Although the board was free to file a motion to dismiss, it was error for the judge to allow it as the plaintiff had stated a claim upon which relief could be granted. That is, he alleged in his complaint that the result of the parole board hearing (a quasi judicial administrative proceeding) was arbitrary or capricious, unsupported by substantial evidence, or otherwise an error of law. See Hoffer v. Board of Registration in Med., 461 Mass. 451, 458 n.9 (2012) (discussing what plaintiff must show to obtain certiorari review).[5]

Given the plaintiff's allegations, the only appropriate way for the court to evaluate the claim is through a review of the administrative record upon a motion for judgment on the pleadings. See School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-576 (2007), citing St. Botolph Citizens Comm., Inc. v. Boston Redev. Auth., 429 Mass. 1, 7 (1999) ("Certiorari is a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial

_____

[5] A motion to dismiss may be appropriate, however, where a plaintiff has not met the time limitations for certiorari review, where the claim is moot, where a plaintiff lacks standing, or where certiorari review is not otherwise proper. See, e.g., Indeck v. Clients' Sec. Bd., 450 Mass. 379, 380-381 (2008).

or quasi-judicial tribunal").  Requiring a defendant agency to
file the administrative record as a matter of course is an
implicit acknowledgement of that fact.[6]  See Firearms Records
Bur. v. Simkin, 466 Mass. 168, 180 (2013), citing Cambridge
Hous. Auth. v. Civil Serv. Comm'n, 7 Mass. App. Ct. 586, 587
(1979).  For this reason, we vacate the dismissal and remand for
further proceedings.

2.  The disability claim.  In his Superior Court complaint,
the plaintiff asserted that the board's decision to deny his
parole petition was unlawful to the extent that the decision
relied on his disability and faulted him for failing to seek out
an appropriate release plan.  He claimed that the decision
violated the ADA,[7] as well as art. 114[8] and G. L. c. 93, § 103.[9]

---

[6] Although it did not explain its reasoning, the Appeals
Court came to the same conclusion in Doucette v. Massachusetts
Parole Bd., 86 Mass. App. Ct. 531, 541 n.10 (2014).  There, the
Superior Court judge had a "near complete record" before him by
the time he considered the board's motion to dismiss for failure
to state a claim, and the Appeals Court affirmed the judge's
decision, citing the parties' agreement to proceed on a partial
record.  Id.  The court cautioned, however, that "[i]n future
cases, certiorari review should be conducted under [Mass. R.
Civ. P.] 12(c), in accordance with Superior Court Standing Order
1-96, and not under rule 12(b)(6)."  Id.

[7] Title II of the Americans with Disabilities Act (ADA)
provides:  "[N]o qualified individual with a disability shall,
by reason of such disability, be excluded from participation in
or be denied the benefits of the services, programs, or
activities of a public entity, or be subjected to discrimination
by any such entity."  42 U.S.C. § 12132 (2012).

Because we vacate the dismissal on procedural grounds, we need not reach the merits of the plaintiff's disability claim. That being said, it is clear from the limited information we have -- i.e., a partial transcript and the board's written decision -- that the board's decision to deny the parole petition does not appear to have considered adequately the application of the ADA and our own relevant constitutional and statutory provisions. We therefore make the following observations.

The ADA and State provisions "prohibit the same conduct: disabled persons may not be 'excluded from participation in or be denied the benefits of' services, programs, or activities [of a public entity], and they may not 'be subjected to discrimination'" (citation omitted). Shedlock v. Department of Correction, 442 Mass. 844, 854 (2004). The plaintiff alleges, and the board clearly assumed (both during the review hearing and in its decision denying his petition for parole), that the

---

[8] Article 114 of the Amendments to the Massachusetts Constitution provides: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth."

[9] General Laws c. 93, § 103, provides in relevant part that "[a]ny person within the commonwealth, regardless of handicap . . . shall, with reasonable accommodation, have the same rights as other persons . . . to the full and equal benefit of all laws and proceedings . . . , including, but not limited to, the rights secured under [art. 114]."

plaintiff suffers from a disability:  cognitive and behavioral limitations resulting from TBI.  The plaintiff also alleges that he has been denied the benefits of a State program, i.e., a fair hearing and parole review decision process, to which he was statutorily entitled.  See 42 U.S.C. § 12131(1)(B) (2012) ("public entity" includes State agencies); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998) (ADA applies to prisoners); Thompson v. Davis, 295 F.3d 890, 896-897 (9th Cir. 2002), cert. denied, 538 U.S. 921 (2003) (ADA applies to parole proceedings, including substantive decision-making).[10] Therefore, the only open question is whether the plaintiff was excluded from the program, or discriminated against in the form of denial of parole, by reason of his disability. See Thompson, supra at 896, 898 n.4 (describing this inquiry as

---

[10] See also United States Department of Justice, Civil Rights Division, Examples and Resources to Support Criminal Justice Entities in Compliance with Title II of the Americans with Disabilities Act (Jan. 2017), https://www.ada.gov/cjta.html [https://perma.cc/4W6S-9T5N] (DOJ Examples) (State programs may include "determining whether to revoke probation or parole, . . . parole and release programs, and re-entry planning").  The guidance document further explains that State entities must "[e]nsure that people with mental health disabilities . . . have an equal opportunity to participate in and benefit from the entities' programs, services, and activities."  Id.  To provide equal opportunities, State entities must "[m]ake reasonable modifications in policies, practices, or procedures when necessary to avoid disability discrimination in all interactions with people with mental health disabilities . . . , unless the modifications would fundamentally alter the nature of the service, program, or activity."  Id.

asking whether prisoner was "otherwise qualified").

The board's decision to grant parole is limited by statute; it may only do so where it finds, "after consideration of a risk and needs assessment, that there is a reasonable probability that, if the prisoner is released with appropriate conditions and community supervision, the prisoner will live and remain at liberty without violating the law and that release is not incompatible with the welfare of society." G. L. c. 127, § 130.[11] No prisoner is entitled to parole, Deal v. Commissioner of Correction, 475 Mass. 307, 322 (2016), and we give the board's determination "considerable deference," Greenman v. Massachusetts Parole Bd., 405 Mass. 384, 387 (1989).

However, this deference is not without limits. First, the board clearly may not categorically exclude any prisoner by reason of his or her disability. See Thompson, 295 F.3d at 898 n.4. Second, both the ADA and the parole statute, G. L. c. 127, § 130, require the board to take some measures to accommodate prisoners with disabilities. Where the board is aware that a

---

[11] General Laws c. 127, § 130, further provides:

"In making this determination, the parole board shall consider whether, during the period of incarceration, the prisoner has participated in available work opportunities and education or treatment programs and demonstrated good behavior. The board shall also consider whether risk reduction programs, made available through collaboration with criminal justice agencies would minimize the probability of the prisoner re-offending once released."

mental disability may affect a prisoner's ability to prepare an appropriate release plan in advance of a parole hearing, the board should make reasonable modifications to its policy, for example, by providing an expert or other assistance to help the prisoner identify appropriate postrelease programming.  See 28 C.F.R. § 35.130(b)(7) (2016);[12] 28 C.F.R. § 35.130(b)(8) (2016).[13] In accommodating prisoners with mental disabilities, the board should also consider whether there are risk reduction programs designed to reduce recidivism in those who are mentally disabled.  See G. L. c. 127, § 130.

These provisions do not require the board to make modifications that would "fundamentally alter" the nature of parole.  28 C.F.R. § 35.130(b)(7).  See 28 C.F.R. § 35.139

_____

[12] Title 28 C.F.R. § 35.130(b)(7) (2016) provides:

"A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

[13] Title 28 C.F.R. § 35.130(b)(8) (2016) provides:

"A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."

(2016).  To the contrary, those who would pose a danger to
society even with risk reduction programs should not be released
on parole.  G. L. c. 127, § 130.  In addition, the board's
important role in protecting society from the early release of
dangerous persons means that the board must be able to consider
whether the symptoms of a prisoner's disability mean that he or
she has a heightened propensity to commit crime while released
on parole.  See Thompson, 295 F.3d at 898 n.4.

The interaction of these requirements means that once the
board became aware that the plaintiff's disability could
potentially affect his ability to qualify for parole, it had the
responsibility to determine whether reasonable modifications
could enable the plaintiff to qualify, without changing the
fundamental nature of parole.[14]  Here, the board indicated its

---

[14] In interpreting art. 114 and the ADA, we have previously
examined whether the disabled individual requested reasonable
accommodations from a State prison.  See Shedlock v. Department
of Correction, 442 Mass. 844, 856-859 (2004).  In that case,
however, we noted that prison officials, while aware of the
prisoner's disability, might have been unaware that he needed
further accommodation.  Id. at 856-857.  Here, the board -- as
reflected in the board member's comments and in the board's
written decision -- was clearly aware of the plaintiff's
disability and that he would need further accommodation if
parole were to work.  As a result, the board had an obligation
to consider whether reasonable modifications could mitigate any
risk that the plaintiff would pose were he released on parole.
See DOJ Examples, supra ("The reasonable modification obligation
applies when an agency employee knows or reasonably should know
that the person has a disability and needs a modification
. . .").

awareness both of the plaintiff's disability and of how symptoms stemming from that disability could affect his behavior both in the parole hearing and on parole. In addition, while one board member discussed the possibility that the plaintiff would need to be in a "very structured setting" while on parole, there is no indication in the limited record before us whether the board actually considered any such modification and whether it would make him a more qualified candidate for parole. Further, the board negatively considered the plaintiff's attitude during the parole hearing and his own failure to identify what the board considered to be appropriate parole programs, without considering whether these behaviors were the result of his TBI.

In short, while the judge correctly noted that in its decision, the board had considered a broad set of factors, including the plaintiff's behavior before his TBI, the record before us shows no consideration of how the plaintiff's limitations affect his parole eligibility, whether these limitations could be mitigated with reasonable modifications,[15] and whether other factors would nevertheless disqualify him from

---

[15] To the extent that the plaintiff's disability prevents him from seeking out such reasonable modifications himself, it may be inappropriate for the board to place the burden on him to put forward his own parole programming proposal.

parole.[16] More importantly, it is impossible to determine the weight the board gave to the disability and associated limitations relative to other factors in its analysis. Once the board has submitted the administrative record, upon a motion for judgment on the pleadings, the motion judge will have a better basis for considering the plaintiff's claims.[17]

3. Frequency of parole review. General Laws c. 127, § 133A, governs parole eligibility for "[e]very prisoner who is serving a sentence for life," with limited exceptions. It provides for an initial hearing fifteen years into a life term, and rehearings every five years if parole is not granted. Id. 120 Code Mass. Regs. § 301.01(5). In contrast, with limited

---

[16] In this case, at least with respect to the plaintiff's limitations due to TBI and how those limitations interact with the criteria for parole, it is difficult to see how the board could proceed without a professional evaluation of the plaintiff's condition and recommendation regarding a postrelease plan that might diminish the risk of recidivism. See 28 C.F.R. § 35.130(h) (2016) (assessment whether safety requirements that exclude persons with disabilities are nevertheless legitimate must be "based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities"); 28 C.F.R. § 35.139(b) (2016) (assessment of whether individual poses "direct threat" must rely "on current medical knowledge or on the best available objective evidence . . . to ascertain" nature of risk and whether it could be reasonably mitigated).

[17] We note that, even if the plaintiff is successful in demonstrating a violation of the ADA upon a motion for judgment on the pleadings, he is not automatically entitled to the relief he seeks (release on parole), but rather to a parole hearing and decision that considers reasonable modifications in light of his disability.

exceptions not relevant here, all other prisoners denied parole are entitled to a rehearing on an annual basis. 120 Code Mass. Regs. § 301.01(2) (1997). The plaintiff argues that the commutation of his original sentence from life with the possibility of parole to thirty-six years to life reduced his sentence to an indeterminate one, such that it is no longer governed by § 133A, and that he is entitled to review on an annual basis.[18] We disagree.

The case to which the defendant cites undermines his argument, as the court held that the nature of a prisoner's sentence depends on the maximum term, which sets "the maximum amount of time that the prisoner will serve in prison if he . . . is not granted parole," whereas the minimum term "serves

---

[18] The plaintiff also argues that because his commuted sentence is similar to that described in the home invasion statute, G. L. c. 265, § 18C ("for life or for any term of not less than twenty years"), his sentence should be governed by G. L. c. 127, § 133 (annual review), rather than G. L. c. 127, § 133A (review every five years). He reasons that in Commonwealth v. Brown, 431 Mass. 772, 774-777 (2000), we mentioned that a defendant convicted under the home invasion statute was subject to § 133. However, the plaintiff ignores the fact that unlike himself, the defendant in Brown was not sentenced to life, but instead to from twenty years to twenty years and one day. Id. at 773.

The plaintiff further argues that we should adopt California's rule, citing three decisions in which that State's highest court held that a sentence of from a term of years to life is not a life sentence. These decisions are distinguishable from the plaintiff's case, however, as all three involved crimes committed when the defendants in question were minors.

as a base for determining his parole eligibility date." Connery
v. Commissioner of Correction, 33 Mass. App. Ct. 253, 254
(1992), S.C., 414 Mass. 1009, 1011 (1993), citing Commonwealth
v. Hogan, 17 Mass. App. Ct. 186, 189 (1983), and Commonwealth
v. Haley, 23 Mass. App. Ct. 10, 18 (1986). Because judges
sentencing on convictions for murder in the second degree now
must fix a minimum term as a parole eligibility date, G. L.
c. 279, § 24, if we adopted the defendant's view it would
essentially mean that no sentences other than a life sentence
without the possibility of parole would be a "life sentence."
This would render § 133A meaningless. See Boston Police
Patrolmen's Ass'n v. Boston, 435 Mass. 718, 721 (2002),
quoting Victory Distribs., Inc. v. Ayer Div. of the Dist. Court
Dep't, 435 Mass. 136, 140 (2001) ("We interpret statutes so as
to avoid rendering any part of the legislation meaningless").
Instead, the board has determined that § 133A and the associated
regulations govern parole hearings for all "individuals serving
a sentence that contains life as the maximum term of the
sentence." 120 Code Mass. Regs. § 100.00 (2001). Therefore,
the plaintiff's sentence remains a "life sentence," and his
parole is governed by § 133A.

Conclusion. We reverse the dismissal of the complaint and
remand for further proceedings consistent with this opinion.

So ordered.