NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-311

JAMES RIVA

vs.

MASSACHUSETTS PAROLE BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, James Riva, is serving a life sentence for the 1980 murder of his grandmother. He appeals from the entry of judgment on the pleadings in favor of the Massachusetts Parole Board (board), which denied his most recent parole request in 2020. Because we are not persuaded that the board's decision to deny him parole was arbitrary, capricious, or clearly erroneous, we affirm.

Background. We briefly summarize the facts underpinning the plaintiff's convictions as found by the board, reserving some for later discussion. See Deal v. Massachusetts Parole Bd., 484 Mass. 457, 458 (2020). On April 10, 1980, at age twenty-two, the plaintiff drove to his grandmother's house. After a brief exchange, the plaintiff obtained a gun from where he had stored it in the basement, shot his grandmother multiple

times, and lit her body on fire before leaving the house.  On October 31, 1981, the plaintiff was convicted of murder in the second degree and arson.  He was sentenced to life with the possibility of parole for the murder charge.

Discussion.  1.  Standard of review.  Pursuant to G. L. c. 127, § 130, the board may grant parole only where it finds, "after consideration of a risk and needs assessment, that there is a reasonable probability that, if the prisoner is released with appropriate conditions and community supervision, the prisoner will live and remain at liberty without violating the law and that release is not incompatible with the welfare of society."[1]  "The board is afforded significant deference with regard to its parole decisions."  Deal, 484 Mass. at 460.  On certiorari review under G. L. c. 249, § 4, the court reviews the

_____

[1] In determining whether a prisoner should be granted parole the board must consider "whether, during the period of incarceration, the prisoner has participated in available work opportunities and education or treatment programs and demonstrated good behavior.  The board shall also consider whether risk reduction programs . . . would minimize the probability of the prisoner re-offending once released."  G. L. c. 127, § 130.  Where "available and relevant," the board may also consider information including "official reports of the nature and circumstances of the offense" and "statements by any victim of the offense for which the offender is imprisoned about the financial, social, psychological, and emotional harm done to or loss suffered by such victim."  120 Code Mass. Regs. § 300.05 (2017).  The board's obligation is to consider all the evidence and make its own assessment as to its weight and credibility, an assessment we may not reconsider.  See Greenman v. Massachusetts Parole Bd., 405 Mass. 384, 387 (1989).

2

board's parole decision only to determine whether it is arbitrary or capricious, unsupported by substantial evidence, or otherwise an error of law.  See Crowell v. Massachusetts Parole Bd., 477 Mass. 106, 109 (2017); Doucette v. Massachusetts Parole Bd., 86 Mass. App. Ct. 531, 541 (2014).  Cf. Deal, supra at 461. "A decision is arbitrary or capricious . . . where it 'lacks any rational explanation that reasonable persons might support.'" Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016), quoting Doe v. Superintendent of Schs. of Stoughton, 437 Mass. 1, 6 (2002).  Because the plaintiff's action in the Superior Court was resolved through the entry of judgment on the pleadings, our review of the Superior Court's ruling is de novo. See C.M. v. Commissioner of the Dep't of Children & Families, 487 Mass. 639, 646 (2021).

2.  Antisocial behavior evidence.  In support of his bid for parole, the plaintiff provided the expert witness testimony of Dr. Elizabeth Albrinck, a forensic psychologist, who concluded that the plaintiff exhibited a low "Antisocial Pattern."  In its decision the board implicitly rejected this opinion when it concluded that the plaintiff "continues to engage in antisocial behavior" based on his posts on social media, recent bouts of stress which he reported caused him paranoia, and intimidating behavior toward family members.  The plaintiff argues that this element of the board's decision was

3

erroneous and lacked the support of expert testimony the board should have offered. We disagree.

First, it is the board's function as factfinder to assess the weight and credibility of the evidence presented at the parole hearing. In making its decision, the board was not required to accept the expert's opinion, nor was it prohibited from relying on evidence that supported a conclusion different from that reached by the plaintiff's expert, even in the absence of countervailing expert testimony.[2] See Deal, 484 Mass. at 463-464.

Second, the board's conclusion that the plaintiff was not sufficiently rehabilitated was supported by substantial evidence. See Crowell, 477 Mass. at 109. Specifically, the board was free make its own assessment of the tone and substance of his writings, some of which the board concluded were threatening, and at least one of which he conceded would cause "anyone [to] be afraid"; his admission to his own ongoing paranoia; and his behavior toward family members, which, the board implicitly concluded, taken together countered and undercut the plaintiff's expert evidence. See Deal, 484 Mass.

---

[2] General Laws c. 127, § 130, explicitly requires that the board need provide no more than "a summary statement of the case indicating the reasons for the decision." We note, however, the desirability of the board's "articulat[ing] the reasons and evidence overcoming the contrary expert opinion." Deal, 484 Mass. at 464.

at 464 (board's conclusion that plaintiff's release not "compatible with the welfare of society" necessarily implicitly rejects plaintiff's expert testimony to the contrary). We discern no error in the judge's determination that the parole board did not act arbitrarily or capriciously in concluding that the plaintiff displayed antisocial tendencies among other factors rendering him unsuitable for parole.

Additionally, it is apparent from the board's decision that the board members considered the other relevant statutory and regulatory factors before concluding that the plaintiff is not yet rehabilitated and thus not suitable for parole. The board acknowledged the opportunities the plaintiff has partaken in, including participating in therapy groups and obtaining his bachelor's degree, but noted that the plaintiff had engaged in only "limited programming to address his multitude of causative factors." In its analysis, the board considered the plaintiff's recent bouts of stress-induced paranoia -- a fact the plaintiff himself acknowledged -- and concluded that he would need to engage in more treatment to cope with the stress of living outside prison. It considered the same in determining the unlikelihood that risk reduction programming would minimize the probability of recidivism in the plaintiff's case, given the centrality of paranoia in his past actions, the unpredictable stressors that emerge in the community, and the voluntariness of

5

the programming available in the community.  See 120 Code Mass.

Regs. § 300.05(1)(e) & (g) (2017).  See also Greenman v.

Massachusetts Parole Bd., 405 Mass. 384, 387 (1989).

   3.  Childhood abuse allegations.  The plaintiff argues that

the board denied his parole in retaliation for his reporting of

childhood abuse by his mother, thus violating the First

Amendment.  He further asserts that his abuse allegations are

supported by medical records including a 1974 record from McLean

Hospital (McLean record) which he argues the board failed

properly to consider.[3]

   At the outset, we note that the McLean record is not a part

of the administrative record.  If the plaintiff wanted the board

to consider it, he was obligated to present the board with a

copy, rather than merely mentioning it at the parole hearing.

See Bielawski v. Personnel Adm'r of the Div. of Personnel

Admin., 422 Mass. 459, 464 (1996).  The McLean record

notwithstanding, the board did hear evidence about the

plaintiff's past abuse.  The plaintiff, however, has not shown

any basis to conclude that the board denied his parole in

---

[3] The record in question documents accusations of ongoing abuse
made by the plaintiff and his brother against their mother, as
well as the mother's denial of the abuse and the father's
admission to having beaten the boys with a belt in an effort to
further the mother's efforts at disciplining the children.

6

retaliation for his speaking about his past abuse and there is nothing in the board's decision that suggests it did so.

4. Bias. The plaintiff names three board members whom he claims were biased against him:  Tonomey Coleman, Sheila Dupre, and Gloriann Moroney.[4]  As to Coleman and Dupre, the plaintiff argued that they questioned him in a mocking tone during his hearing.  The judge, who reviewed the videorecorded hearing, determined that none of the board members spoke to the plaintiff in an inappropriate tone.  Upon our own review of the same footage, we agree.  See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018).

The plaintiff's remaining arguments about Dupre do not point to bias but rather seem to be claims that she misunderstood an essay he published.  To the extent we consider this argument, we note that in conducting the required "risk and needs assessment" on which its parole decision turned, the board was permitted to consider a broad range of evidence.  See 120 Code Mass. Regs. § 300.05(1) (2017).  We are not persuaded that the board or any of its members acted arbitrarily or capriciously in considering the plaintiff's writings or in

_____

[4] The plaintiff did not raise this objection before the board, nor did he seek the recusal of any board members from his hearing.  A court may decline to consider allegations of bias where they are not raised in a timely manner.  See Commonwealth v. Rivera, 473 Mass. 1003, 1006 (2015).

7

concluding that certain examples of his writings were suggestive of ongoing paranoia, or that the conclusion itself was indicative of any board member's bias against the plaintiff.

As to Moroney, to the extent that the plaintiff's arguments about her prior employment with the Attorney General's office are not waived, see Doucette, 86 Mass. App. Ct. at 534-535, we discern no support for his claim that she was biased against him as a result. Although the opinion in Committee for Pub. Counsel Servs. v. Chief Justice of the Trial Court, 484 Mass. 431 (2020) (CPCS), mysteriously lists Moroney as appearing, this is not correct. In fact, the board was represented in that case by the Attorney General, and Moroney neither argued nor filed any documents in that case. In any event, the plaintiff has failed to show how any involvement by Moroney in CPCS could have impacted him in this case. He also argues that Moroney's involvement as Assistant Attorney General in one of his prior parole appeals renders her biased. Contrary to the plaintiff's assertion, Moroney agreed with the prior Superior Court judge's assertions that the plaintiff was not entitled to or surprised by the family member letters and that any error in one paragraph of the board's decision would not be reversible, and not with

8

any "fantastic weird postulate."  There is similarly no evidence to show bias resulting from Moroney's involvement in that case.

<u>Judgment affirmed</u>.

By the Court (Ditkoff, Hand & D'Angelo, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:   August 1, 2023.

---

[5] The panelists are listed in order of seniority.