NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13495

COMMONWEALTH  vs.  QUASIM HASTINGS & another.[1]


Berkshire.     January 8, 2024. – May 13, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.


Indigent.  Parole.  Imprisonment, Parole, Disabled prisoner.
    Constitutional Law, Parole.  Practice, Criminal, Parole.
    Statute, Construction.  Mental Health.  Social Worker.


Indictment found and returned in the Superior Court Department on May 14, 2003.

An ex parte motion for funds to retain an expert, filed on August 12, 2022, was considered by Douglas H. Wilkins, J.; a motion for reconsideration was heard by him; and the case was reported by him to the Appeals Court.

The Supreme Judicial Court granted an application for direct appellate review.


Sharon Dehmand for the defendant.
Andre A. Janiszewski, Assistant Attorney General, for the intervener.
Benjamin H. Keehn, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

---

[1] Massachusetts Parole Board, intervener.

GAZIANO, J.  This appeal concerns the scope of the constitutionally mandated exception to G. L. c. 261, §§ 27A-27G (indigency statute), carved out in Diatchenko v. District Attorney for the Suffolk Dist., 471 Mass. 12, 26-27 (2015) (Diatchenko II).  In particular, we address whether the exception authorizes a judge to allow an indigent prisoner's motion for funds to retain an expert witness for an upcoming parole hearing.

Quasim Hastings, convicted of murder in the second degree in 2004, is eligible to be considered for release on parole.  He has been diagnosed with a mental disability and, therefore, is entitled to a parole hearing that affords him protections secured by art. 114 of the Amendments to the Massachusetts Constitution as well as Federal and State statutes prohibiting discrimination on the basis of disability.  See Crowell v. Massachusetts Parole Bd., 477 Mass. 106, 110-112 (2017).

Prior to a 2023 parole hearing, appointed counsel for Hastings filed, in the original criminal case, a motion for funds to retain a forensic psychologist under Crowell.  A Superior Court judge allowed the motion.

Hastings's counsel filed a second motion for funds to retain a social services advocate to assist with preparing a prerelease plan.  A different Superior Court judge denied this request for public funds.  The judge reasoned that the plain

language of the indigency statute limits his authority to approve funds to pending proceedings or appeals in any court. He found also that this court's constitutionally mandated exception does not extend to Hastings's statutory right to parole consideration. The judge reported to the Appeals Court his denial of the motion for funds, and we granted Hastings's application for direct appellate review.

For the following reasons, we conclude that Hastings's motion for funds to retain a social services advocate implicates his State constitutional right to reasonable disability accommodations. Because the constitutionally mandated exception to the indigency statute applies, the order denying Hastings's motion for funds is reversed.[2]

Background. In 2004, Hastings pleaded guilty in the Superior Court to murder in the second degree and was sentenced to life with the possibility of parole in fifteen years. See G. L. c. 265, § 2; G. L. c. 127, § 133A. Hastings, in 2015, was diagnosed with mental illnesses, including major depressive disorder with psychotic features. Prior to Hastings's initial 2019 parole hearing, the Massachusetts Parole Board (board)

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services in support of Hastings and the amicus letter submitted by the Committee for Public Counsel Services and Prisoners' Legal Services of Massachusetts.

requested an appointment of counsel from the Committee for Public Counsel Services (CPCS) based on Hastings's mental health disability. CPCS assigned Hastings counsel. In 2018, Hastings's counsel filed in his Superior Court criminal case a motion for funds to retain the services of a forensic psychiatrist to assist in the parole hearing. See Commonwealth vs. Hastings, Mass. Super. Ct., No. 0376CR00106 (Berkshire County May 14, 2003). A Superior Court judge allowed the motion. The board denied Hastings's petition for parole in 2019, and he was given a four-year setback. See Roberio v. Massachusetts Parole Bd., 483 Mass. 429, 432 (2019) (period between board's denial of parole and prisoner's statutory right to subsequent review is referred to as "setback").

Hastings's counsel, in advance of the 2023 parole hearing, filed two additional motions for funds in Hastings's Superior Court criminal case. In the first motion, filed on June 6, 2022, $5,000 was requested to retain a forensic psychologist. Counsel represented that "[a]n updated evaluation and testimony by a forensic psychologist are necessary for . . . Hastings to adequately present his case for parole." A Superior Court judge allowed the motion on June 10, 2022.

Next, on August 12, 2022, Hastings's counsel filed a motion for funds to retain a social services advocate to assist with preparing a release plan. According to counsel, "[p]art of

. . . Hastings'[s] application for parole will involve having an extensive release plan which requires application and acceptance by the Department of Mental Health as well as placement, housing, and other mental health services."  A different Superior Court judge (motion judge), on September 22, 2022, denied the motion for funds as exceeding the Superior Court's statutory authority.  He explained, "The [c]ourt's authority under G. L. c. 261, [§ 27B,] is limited to 'any civil, criminal or juvenile proceeding or . . . appeal in any court.'  A parole hearing is not 'in any court.'"

Hastings's counsel, on October 19, 2022, moved for reconsideration.  The motion was supported by affidavits of a social worker and the director of the CPCS parole advocacy unit.  The social worker noted that "[c]lients with disabilities often require experts specialized in services for people with disabilities."  She explained the advantages of retaining a clinician to identify appropriate support networks and services to assist a client's successful reentry into the community.  The director of the CPCS parole advocacy unit noted that the board "often relies upon expert evaluations and reports obtained by counsel via a motion for funds in determining the suitability of disabled prisoners for release on parole."  She added that it therefore is "imperative" for disabled parole candidates to present comprehensive release plans crafted by social services

experts capable of navigating complex intra-agency referrals, assessments, and specialized residential care.  She also submitted a list of docket numbers of over thirty cases in which Superior Court judges across the Commonwealth had allowed motions for funds to retain experts, including social workers, psychiatrists, and psychologists, to assist nonjuvenile disabled prisoners in parole hearings.

The motion judge denied Hastings's motion for reconsideration.  The phrase "in any court" within G. L. c. 261, § 27B, he reasoned, "limits the authority to authorize payment by the Commonwealth" to pending court proceedings.  Moreover, he determined that the constitutional exception to this rule, set forth in Diatchenko II, does not apply.  The motion judge stated that Hastings's right to parole consideration after serving fifteen years of a life sentence "arises by statute."  See G. L. c. 127, § 133A.  In contrast, he stated, a juvenile homicide offender's parole eligibility arises out of "a constitutional limitation on the court's authority to order a life sentence." While recognizing the board's duty to accommodate Hastings's disability, the motion judge concluded that "[t]he fact that the Legislature and [board] had provided no statutory avenue for relief against the Executive does not require disregarding the plain language of G. L. c. 261, § 27B[,] or the controlling

authority under that statute."  The motion judge reported the denial of the motion for funds for appellate consideration.[3]

Discussion.  The indigency statute provides a mechanism for indigent litigants to obtain public funds to hire expert witnesses.  See Reade v. Secretary of the Commonwealth, 472 Mass. 573, 574, 578 (2015), cert. denied, 578 U.S. 946 (2016).  Under G. L. c. 261, § 27C (4), on a finding of indigency, the court "shall not deny any request with respect to extra fees and costs if it finds the document, service or object is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he would have if he were financially able to pay."  "Extra fees and costs" include the costs of "expert assistance."  G. L. c. 261, § 27A.  See generally Commonwealth v. Matranga, 455 Mass. 45, 50-51 (2009) (discussing judge's role in approving request for expert witness funds).  The indigency statute embodies the principle of "equal justice under the law" by ensuring that court house doors are not closed to the poor. Edwards, petitioner, 464 Mass. 454, 461 (2013).

The text of G. L. c. 261, §§ 27A-27G, as the motion judge determined, refers solely to fees and costs associated with

---

[3] The motion judge expressed some doubt as to whether Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), was the proper mechanism by which his ruling could be reported.  In any event, Hastings subsequently consented to the reporting of the case to the Appeals Court.  See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004).

pending trials and appeals. Despite its salutary purpose, the indigency statute does not apply every time an indigent litigant seeks public funds to assert a legal claim. See Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 779 (2008) ("G. L. c. 261, §§ 27A-27G, read as a whole, makes clear that it is concerned with fees and costs that relate directly to the prosecution or defense of actions and appeals pending in a court . . . not an underlying adjudicatory proceeding before an administrative agency"). Section 27B provides in relevant part: "Upon or after commencing or answering to any civil, criminal or juvenile proceeding or appeal in any court," a party may file an affidavit of indigency and request "waiver, substitution or payment by the commonwealth of fees and costs" (emphasis added). G. L. c. 261, § 27B. Section 27C (4) authorizes the payment of expert witness fees that are reasonably necessary "to assure the applicant as effective a prosecution, defense or appeal as he would have if he were financially able to pay" (emphasis added). G. L. c. 261, § 27C (4). And § 27A defines "extra fees and costs" as fees and costs "in addition to those a party is normally required to pay in order to prosecute or defend his case" (emphasis added). G. L. c. 261, § 27A. See Commonwealth v. Dubois, 451 Mass. 20, 33 (2008) (G. L. c. 261, § 27C, does not authorize payment of funds to hire handwriting expert for motion

for new trial); Commonwealth v. Carter, 429 Mass. 266, 270 (1999) ("Section 27C does not authorize a judge to allow costs in connection with the presentation of a new trial motion based on a claim of ineffective assistance of counsel").[4]

In Diatchenko II, 471 Mass. at 25-26, we held that the indigency statute did not, on its face, authorize the expenditure of public funds for expert witnesses to assist juveniles in the context of an administrative hearing. "[General Laws] c. 261, §§ 27A-27G, the statutory provisions generally authorizing the payment of public funds to cover costs and fees of indigent litigants, apply most directly to costs and fees relating to court proceedings, not proceedings before administrative or executive agencies like the [parole] board." Id. at 26.

The next question to address is whether Hastings's request for funds for expert witness services falls within the constitutionally mandated exception to the indigency statute carved out in Diatchenko II. Notwithstanding the plain language of §§ 27A, 27B, and 27C (4), we held in Diatchenko II, 471 Mass. at 27-28, that a judge is authorized to grant funds for an expert witness whose assistance the judge deems "reasonably

---

[4] By amendment in 2001, Mass. R. Crim. P. 30 (c) (5), as appearing in 435 Mass. 1501 (2001), allows for the payment of costs associated with preparation of a new trial motion. See Reporter's Notes to Mass. R. Crim. P. 30.

necessary" to protect an indigent juvenile homicide offender's constitutional right to a "meaningful opportunity for release" at an initial parole hearing.

This holding was foreshadowed by prior case law. In Commonwealth v. Davis, 410 Mass. 680, 681-682 (1991), the defendant filed a postappeal motion in the Superior Court for deoxyribonucleic acid (DNA) testing of physical evidence in the Commonwealth's possession. He maintained that the test results would constitute newly discovered evidence sufficient to support a motion for a new trial. Id. at 682. A Superior Court judge denied the motion. Id. In opining on the defendant's substantive claim, this court stated that the defendant's motion for DNA testing costs "is not cognizable under [G. L.] c. 261, § 27C (4), because the funds sought are not related to a pending trial or appeal." Id. at 684. We acknowledged that this interpretation of § 27C "may work a hardship on convicted indigents seeking the funds to carry out a newly discovered scientific technique which could yield exculpatory evidence." Id. We concluded that "[w]here the Legislature has chosen not to fund certain procedures not constitutionally mandated, however, this court may not rewrite the statute to do so." Id. Likewise, in Carter, 429 Mass. at 270, we observed that the defendant "makes no claim that he was entitled constitutionally to funds for an investigator."

The Diatchenko II court carved out an exception to the indigency statute to safeguard a parole-eligible, indigent juvenile homicide offender's right under art. 26 of the Massachusetts Declaration of Rights to a meaningful parole review.  See Diatchenko II, 471 Mass. at 27-28.  We explained:

> "Because the postconviction proceeding at issue here, a parole hearing for a juvenile homicide offender, is required in order to ensure that an offender's life sentence conforms to the proportionality requirements of art. 26, the proceeding is not available solely at the discretion of the State.  Rather, it is constitutionally mandated, and as such, it requires certain protections not guaranteed in all postconviction procedures.  It is appropriate, therefore, to construe G. L. c. 261, §§ 27A-27G, to authorize a Superior Court judge, upon motion of a parole-eligible, indigent juvenile homicide offender, to allow for the payment of fees to an expert witness . . . ."

Id. at 27.[5]

In this case, we agree with the motion judge's conclusion that Hastings's right to parole consideration arises by operation of G. L. c. 127, § 133A.  Statutory parole eligibility stands in contrast to parole eligibility that is "required in order to ensure that an offender's life sentence conforms to the proportionality requirements of art. 26."  Diatchenko II, 471 Mass. at 27.  The constitutionally mandated exception to the

---

[5] In 2018, as part of the comprehensive criminal justice reform act, the Legislature amended G. L. c. 127, § 133A, to provide indigent juvenile homicide offenders with the "right to have appointed counsel at the parole hearing" and "the right to funds for experts pursuant to chapter 261."  G. L. c. 127, § 133A, as amended through St. 2018, c. 69, § 98.

indigency statute, as outlined in Diatchenko II, does not sweep so broadly as to fund all requests for fees and costs whenever an indigent prisoner reaches statutory parole eligibility.

Article 114, however, adds a "constitutional dimension" to Hastings's funding request "that does not exist for other offenders whose sentences include parole eligibility." Diatchenko II, 471 Mass. at 19. Accordingly, we hold that a judge has the discretion to allow a motion for funds to pay for expert assistance as reasonably necessary to safeguard the indigent prisoner's constitutional rights prohibiting discrimination on the basis of disability.

We examined the board's duty to accommodate prisoners with disabilities in Crowell, 477 Mass. at 112-113. In that case, Crowell asserted that the board's failure to properly consider the effects of his traumatic brain injury violated art. 114 as well as rights secured by Federal and State handicapped discrimination statutes. Id. at 110. See G. L. c. 93, § 103; 42 U.S.C. §§ 12101 et seq. (Americans with Disabilities Act or ADA).[6] This court vacated the dismissal of Crowell's complaint

---

[6] Article 114, ratified in 1980, provides: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." See Carleton v. Commonwealth, 447 Mass. 791, 811 (2006). "Actions to enforce the rights guaranteed by art. 114 . . . are authorized by G. L. c. 93, § 103," the Massachusetts Equal Rights Act. Shedlock v.

challenging the denial of parole on procedural grounds and remanded for further findings. Crowell, supra at 110-111. Nonetheless, we took the opportunity to discuss the board's constitutional and statutory obligations to accommodate Crowell's mental disability. See id. at 111-112 ("the only open question is whether the plaintiff was excluded from the program [a fair hearing and parole review decision process], or discriminated against in the form of denial of parole, by reason of his disability"). See also Shedlock v. Department of Correction, 442 Mass. 844, 855-856 (2004) (art. 114 and ADA require reasonable accommodation in prison setting with due regard for penological concerns); Layne v. Superintendent, Mass. Correctional Inst., 406 Mass. 156, 160 (1989) (art. 114 claim brought by disabled prisoners unable to access library).

As an example of a reasonable disability accommodation, the Crowell court cited expert witness funds, such as those sought by Hastings in advance of his 2023 parole hearing. See Crowell, 477 Mass. at 112. Discussing the board's duty to accommodate disabled prisoners, we stated that "[w]here the board is aware

---

Department of Correction, 442 Mass. 844, 852 n.6 (2004). See Layne v. Superintendent, Mass. Correctional Inst., Cedar Junction, 406 Mass. 156, 159-160 (1989).

Title II of the Americans with Disabilities Act also prohibits public entities from excluding qualified disabled persons from participation in, or being denied the benefits of, services, programs, or activities. See 42 U.S.C. § 12132.

that a mental disability may affect a prisoner's ability to prepare an appropriate release plan in advance of a parole hearing, the board should make reasonable modifications to its policy, for example, by providing an expert or other assistance to help the prisoner identify appropriate postrelease programming." Id. The Crowell court did not, as the issues were not raised, identify a source of funding for needed expert assistance or consider that the board neither receives funds nor has a mechanism to authorize expert witness expenditures.

This case squarely presents that issue. A failure to fund a disabled prisoner's access to expert witness services would render hollow the constitutional right to "participat[e] in" and not be "denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." Art. 114 of the Amendments to the Massachusetts Constitution. Applying the constitutionally mandated exception set forth in Diatchenko II, we construe the indigency statute to authorize a Superior Court judge, on motion by a parole-eligible, disabled prisoner, to allow for the payment of funds for expert services that are reasonably necessary to safeguard the prisoner's constitutional right to a parole hearing free of discrimination on the basis of disability.

Conclusion. The order dated September 22, 2022, denying Hastings's motion for funds to retain a social services advocate

to assist with preparing a prerelease plan for his upcoming parole hearing, is reversed.

<u>So ordered</u>.
